Brown, Atty. Gen., Appellant, *v.*
Martinelli, d.b.a. Magco & Co., Appellee.

(No. 80-715—Decided April 15, 1981.)

Mr. William J. Brown, attorney general, Mr. Alex Shumate and Mr. Michael J. Barney, for appellant.

Messrs. Henderson, Covington, Stein, Donchess & Messenger, Mr. James L. Messenger and Mr. Donald J. Barley, for appellee.

STEPHENSON, J.  The pivotal issue presented for review in this appeal is the applicability of the Home Solicitation Sale Act enacted by the General Assembly in 134 Ohio Laws 43, effective January 1, 1973, as amended in 135 Ohio Laws Pt. II 624, effective September 30, 1974, to the sale of consumer goods solely by telephone solicitation of the buyer at his residence, when such solicitation is initiated by the seller.

The Home Solicitation Sale Act appears in R. C. 1345.21 through 1345.28. These statutes, *inter alia,* (1) provide to the buyer of consumer goods and services covered by the Act, the absolute right to cancel the sale until midnight of the third business day after the day on which the buyer signs an agreement or offer to purchase (R. C. 1345.22); (2) require every home solicitation sale to be evidenced by a written agreement or offer to purchase, signed by the buyer, which written agreement must provide thereon notice of the right of cancellation (R. C. 1345.23); and (3) provide that failure to comply with the provisions of R. C. 1345.21 to 1345.27 constitutes a deceptive act or practice in connection with a consumer transaction in violation of R. C. 1345.02, making applicable the remedies available to the Attorney General as enumerated in R. C. 1345.07 (R. C. 1345.28). It follows, therefore, that if the sales

by appellee by telephone solicitation are "home solicitation" sales as defined in R. C. 1345.21(A), the "no-signature" sales procedure of appellee violate the Act, since such sales are not evidenced by a written agreement signed by the buyer with notice of the right of cancellation appearing thereon.

"Home solicitation sale" is defined in R. C. 1345.21, in pertinent part, as follows:

"As used in sections 1345.21 to 1345.28 of the Revised Code:

"(A) 'Home solicitation sale' means a sale of consumer goods or services in which the seller or a person acting for him engages in a personal solicitation of the sale at a residence of the buyer, including solicitations in response to or following an invitation by the buyer, and the buyer's agreement or offer to purchase is there given to the seller or a person acting for him, or in which the buyer's agreement or offer to purchase is made at a place other than the seller's place of business. It does not include a transaction or transactions in which:

"* * *

"(2) The transaction was conducted and consummated entirely by mail or by telephone if initiated by the buyer, and without any other contact between the seller or his representative prior to the delivery of goods or performance of the service;"

In holding that appellee's "no signature" sales program was not a "home solicitation sale" as defined in R. C. 1345.21, both courts below relied upon *Brown* v. *Periodical Publishers Service Bureau, Inc., supra,* the facts of which case are virtually identical to those in the case *sub judice.* The court in *Brown* essentially reasoned that the Act was penal in nature and therefore must be strictly construed; that even though R. C. 1345.21 was amended by providing in R. C. 1345.21(A)(2) that a "home solicitation sale" does not include a "transaction conducted and consummated entirely by mail or by telephone if initiated by the buyer* * *," such exclusionary language could not create an inclusion in the definition in R. C. 1345.21(A) which retained, after amendment, the language of engaging "* * *in a personal solicitation of the sale at the residence of the buyer* * *"; and that, therefore, telephone solicitation sales were not subject to the Act. The count did not

undertake to determine what the General Assembly intended by the exclusionary language in R. C. 1345.21(A)(2) respecting transactions by telephone "initiated by the buyer."

The Court of Appeals below in its opinion affirming the grant of summary judgment expressly adopted the unarticulated premise underlying the holding in *Brown,* by concluding that "***the statute is meant to cover sales actually made in the home of the buyer and in the physical presence of the sales person***." Resolution of the correctness of such conclusion is the crux of this appeal.

There can be no doubt that the extensive 1974 revision of the Ohio Home Solicitation Sale Act by the General Assembly was for the purpose of achieving substantial uniformity between a rule adopted by the Federal Trade Commission, effective June 7, 1974, regulating door to door sales and the Ohio Act.* Such is demonstrable by a comparison of the substance of amendatory language of the Act and the related provisions of the rule. With respect to telephone sales, the rule provides that "door to door sales" does not include a transaction:

"(4) [c]onducted and consummated entirely by mail or telephone; and without any other contact between the buyer and the seller or its representative prior to delivery. of the goods or performance of the services;"

Significantly, the General Assembly in R. C. 1345.21(A)(2) adopted the nearly identical language respecting transactions by telephone, but included, additionally, the phraseology "if initiated by the buyer."

Pursuant to R. C. 1.47(B), it is presumed that in enacting a statute the General Assembly intended the entire law to be effective. Further, this court has held that, in determining legislative intent, "[t]he court must look to the statute itself to determine legislative intent, and if such intent is clearly expressed therein, the statute may not be restricted, constricted, qualified, narrowed, enlarged or abridged; significance and effect should, if possible, be accorded to every word, phrase,

---

* The Federal Trade Commission rule is captioned "COOLING-OFF PERIOD FOR DOOR-TO-DOOR SALES" and appears in 16 C.F.R. 429.1. In substance, the rule provides for pre-emption as to state laws only when, if door to door sales are permitted by state law, such laws are directly inconsistent with the provisions of the rule. Such pre-emption provisions are explanatory of the reason for the 1974 substantial revision of the Ohio Home Solicitation Sale Act.

sentence and part of an act, and in the absence of any defini-
tion of the intended meaning of words or terms used in the
legislative enactment, they will, in the interpretation of the
act, be given their common, ordinary and accepted meaning in
the connection in which they are used." *Wachendorf* v. *Shaver*
(1948), 149 Ohio St. 231, paragraph five of the syllabus.

In a like vein, this court has stated that "[t]he primary
duty of a court in construing a statute is to give effect to the in-
tention of the Legislature enacting it. In determining that in-
tention, a court should consider the language used and the ap-
parent purpose to be accomplished, and then such a construc-
tion should be adopted which permits the statute and its
various parts to be construed as a whole and gives effect to the
paramount object to be attained." *Humphrys* v. *Winous Co.*
(1956), 165 Ohio St. 45, 49.

Inasmuch as R. C. 1345.21(A) was amended to its present
form in the same Act which enacted R. C. 1345.21(A)(2), both
sections becoming effective at the same time and relating to
the same subject matter, *i.e.,* what constitutes a "home
solicitation sale," they are *in pari materia,* must be construed
together and any apparent contradictions reconciled, if
possible. *Blackwell* v. *Bowman* (1948), 150 Ohio St. 34, 44;
*State, ex rel. O'Neil,* v. *Griffith* (1940), 136 Ohio St. 526.

Construing such sections together, as we must, they are
readily reconcilable if the General Assembly intended to in-
clude within the meaning of "home solicitation sale" those
sales which are accomplished solely by telephone solicitation
initiated by the *seller.* We conclude such was the intention of
the General Assembly. While, when viewed in the abstract, the
phrase "personal solicitation" utilized in R. C. 1345.21(A) can
arguably be construed, as did the courts below, as reflecting
the intention of the General Assembly to require the physical
presence of the soliciting seller, the following reasons negate
that construction of such sections.

We note first that in the 1974 revision of the Act the
General Assembly manifested a general intention to broaden
the definition of "home solicitation sale" by addition of the
wording, "or in which the buyer's agreement or offer to pur-
chase is made at a place other than the seller's place of
business." More importantly, the General Assembly in de-

clining to adopt *in toto* the exclusionary language respecting mail and telephone solicitation sales appearing in the Federal Trade Commission rule of which it was clearly aware, and excluding only mail and telephone solicitation sales *initiated by the buyer,* clearly manifested an intention to give to Ohio consumers greater protection than that afforded under the federal rule by including in the "home solicitation sale" definition telephone solicitation sales initiated by the *seller.* To conclude otherwise would render nugatory the phrase "initiated by the buyer," since we can perceive of no other logical reason for the insertion of such wording other than to delineate the meaning and scope of the "home solicitation sale" definition in R. C. 1345.21(A). Such conclusion is in accord with the "basic presumption in statutory construction that the General Assembly is not presumed to do a vain or useless thing, and that when language is inserted in a statute it is inserted to accomplish some definite purpose." *State, ex rel. Cleveland Electric Illum. Co.,* v. *Euclid* (1959), 169 Ohio St. 476, 479.

Finally, we observe that while the evils which the Act endeavors to proscribe may be greater in the context of a consumer sale accomplished by in-person solicitation, such evils nonetheless exist, in a diminished form, when such sale is accomplished through telephone solicitation, a fact apparent in the statutory regulatory scheme adopted by the General Assembly.

Accordingly, the judgment of the Court of Appeals affirming the grant of summary judgment to appellee is reversed, and summary judgment is hereby granted in favor of appellant.

*Judgment reversed.*

CELEBREZZE, C. J., W. BROWN, P. BROWN, LOCHER, HOLMES and C. BROWN, JJ., concur.

STEPHENSON, J., of the Fourth Appellate District, sitting for SWEENEY, J.