**R. BAUER & SONS ROOFING & SIDING, INC., Appellant and Cross–Appellee,**

**v.**

**KINDERMAN et al., Appellees and Cross–Appellants.**

[Cite as *R. Bauer & Sons Roofing & Siding, Inc.
v. Kinderman* (1992), 83 Ohio App.3d 53.]

Court of Appeals of Ohio,
Montgomery County.

No. 13239.

Decided Nov. 24, 1992.

*Michael R. Eckhart,* for appellant and cross-appellee.

*Robert D. Goelz,* for appellees and cross-appellants.

---

Brogan, Judge.

Plaintiff-appellant and cross-appellee, ·R. Bauer & Sons Roofing and Siding, Inc. ("Bauer"), appeals from the judgment of the Montgomery County Court of Common Pleas in favor of defendants-appellees and cross-appellants, Mary E. Kinderman and Constance Sakar.

The underlying facts of the case are as follows. Appellant Bauer is an Ohio corporation specializing in certain aspects of the home remodeling trade. Bauer maintains a warehouse and showroom at a fixed location at which it exhibits many of the products it offers for sale. On May 17, 1989, appellees contacted Bauer by telephone, requesting an estimate on a new roof and replacement windows.

In response to the call, Bauer's salesman visited appellees' residence several times in order to complete the estimate and consummate the sale. On June 2, 1989, at appellees' home, the salesman had appellee Kinderman sign a contract which proposed that Bauer would provide and install for appellees a new roof, replacement windows, and a new patio door for a total contract price of $5,875. The contract form did not include a provision giving appellees notice that they had three days in which to cancel the contract.

Appellees paid to Bauer a $1,500 deposit. Bauer ordered shingles, replacement windows, and a door from its suppliers shortly after the execution of the contract. Each of these items was either custom ordered or specially manufactured to fit the size of the openings in appellees' house. Bauer kept none of these items in stock at its place of business; however, it did keep samples of each item on hand.

On or about August 11, 1989, the roof was completed and appellees subsequently paid to Bauer $2,750 for the roof component of the contract. Around the same time the existing windows were removed and destroyed and the new windows and patio door were installed.

Appellees were not satisfied with the installation of the windows and door and refused to pay the remaining balance of $1,625. Appellees sent Bauer a notice of cancellation of the contract on December 26, 1989.

Bauer filed suit against appellees for payment of the balance of the contract price. Appellees asserted as a counterclaim a violation of the Home Solicitation Sale Act ("Act"), codified at R.C. 1345.21 *et seq.* The cause was heard before a referee, who recommended that judgment be entered in favor of appellees.

Because the referee found that the transaction between Bauer and appellees fell within the ambit of the Act, he found that Bauer violated the Act by not notifying appellees in writing of their right of cancellation pursuant to R.C. 1345.22, thereby giving appellees the continuing right to cancel the contract.

Because the referee found the underlying contract unenforceable due to the violation of the Act, he recommended the removal of a mechanic's lien filed by Bauer against appellees' property to secure the payment of the balance of $1,625 due on the contract.

Based on the application of *Reichert v. Ingersoll* (1985), 18 Ohio St.3d 220, 18 OBR 281, 480 N.E.2d 802, the referee concluded that Bauer should be allowed to keep the amount already paid by appellees for the new roof.

The referee found that the roofing materials could not be returned to Bauer in substantially the same condition as when they were installed on appellees' home, that the roofing materials had been subjected to unreasonable use, and that they would be worthless if they had to be removed for return to the seller. The referee further found that appellees had no complaints about the quality of the roofing job. Moreover, the referee determined that to allow appellees to retain the roof without payment would work a substantial injustice on Bauer.

The referee concluded that appellees were dissatisfied with the windows and door, and that these items could be returned to Bauer without substantial change. Furthermore, the referee assumed that if Bauer had complied with the Act, appellees might have cancelled the transaction with regard to the replacement door. Therefore, the referee recommended that Bauer return appellees' $1,500 deposit.

Finally, the referee found appellees' prayer for attorney fees meritorious and recommended that the matter be set for an attorney-fee hearing.

On December 13, 1991, the trial court approved the referee's report and recommendations and entered judgment in favor of appellees. On February 19, 1992, the trial court adopted the referee's report and recommendation that appellees be awarded attorney fees and entered judgment for attorney fees in the amount of $1,952.50.

On January 10, 1992, Bauer filed a notice of appeal from the judgment of the trial court, asserting the following two assignments of error: (1) "The trial court erred in finding that the Home Solicitation Sale Act, R.C. 1345.21 *et seq.*, applies to the facts of this case and that plaintiff was not entitled to the balance due under the contract." and (2) "Assuming, *arguendo,* that the Consumer Sales Practices Act applies, the trial court nevertheless erred in awarding attorney fees and ordering return of the deposit by appellant."

On March 20, 1992, appellees filed a notice of appeal from the judgment of the trial court as cross-appellants and asserted the following sole assignment of error: "The court below committed reversible, prejudicial error and abused its discretion as a matter of law in failing to award the cross-appellants the additional sum of $2,750.00 for the roof installed by the appellant."

Our discussion of Bauer's assignments of error will be dispositive of the issue presented by appellees' sole assignment of error and therefore we will not separately address appellees' assignment of error.

 Bauer in substance argues, on the authority of *Tambur's, Inc. v. Hiltner* (1977), 55 Ohio App.2d 90, 9 O.O.3d 239, 379 N.E.2d 231, and the cases following it, that the trial court erred in finding that the Home Solicitation Sale Act, R.C. 1345.21 *et seq.*, applied to the facts of the present case.

The *Tambur's* court ruled that aluminum siding cannot be a "consumer good" as defined in R.C. 1345.21(E) because it is not intended for personal, family, or household use within the meaning of the statute. *Id.* at 93–94, 9 O.O.3d at 240–241, 379 N.E.2d at 233–234.

Another basis for the *Tambur's* court's ruling is that R.C. 1345.27 requires the consumer to return the goods without diminution in quantity or unreasonable wear or use. *Id.* at 94–95, 9 O.O.3d at 241–242, 379 N.E.2d at 234. The court reasoned that since aluminum siding could not be returned in its original condition once it had been cut and affixed to the realty, it could not be the subject of a home solicitation sale under the Act. *Id.*

Bauer argues on the basis of *Tambur's* that the installation of roofing and replacement windows is analogous to aluminum siding in that these items should not be considered "consumer goods" within the meaning of the Act.

 We cannot agree with the reasoning of the Lucas County Court of Appeals in *Tambur's* and respectfully decline to follow its decision. For the following reasons, we agree with the court below that the transaction in the present case is of the nature contemplated by the Act, and that the Act does apply to home improvement products and services.

R.C. 1345.21(A) sets out a general definition of a "home solicitation sale":

" 'Home solicitation sale' means a sale of consumer goods or services in which the seller or a person acting for him engages in a personal solicitation of the sale at a residence of the buyer, including solicitations in response to or following an invitation by the buyer, and the buyer's agreement or offer to purchase is there given to the seller or a person acting for him, or in which the buyer's agreement or offer to purchase is made at a place other than the seller's place of business."

The Ohio Home Solicitation Sale Act was patterned after the Federal Trade Commission rule entitled "Cooling–Off Period for Door-to-Door Sales," Section 429.1, Title 16, C.F.R., and was amended in 1974 to achieve substantial uniformity with the FTC rule. See *Brown v. Martinelli* (1981), 66 Ohio St.2d 45, 20 O.O.3d 38, 419 N.E.2d 1081. Accordingly, the definitions and notice requirements in the Ohio Act are nearly identical to those in the FTC rule.

Both the Ohio Act, R.C. 1345.21(E), and the FTC rule, Section 429.1, fn. 1(b), define "consumer goods or services" as "goods or services purchased, leased, or rented primarily for personal, family, or household purposes." There is no further amplification of this definition in the Ohio Act and no Ohio cases have discussed the definition with any clarity. Therefore, the FTC rule is one important and useful source in determining what the General Assembly wished to encompass in the term "consumer goods or services." See *Martinelli*, 66 Ohio St.2d at 48, 20 O.O.3d at 40, 419 N.E.2d at 1083.

The legislative history of the FTC rule clearly indicates that the rule was intended to protect the buyers of home improvement products and services, and that the products and services involved in home improvement and repair were to be considered "consumer goods or services."

For example, contained in the Statement of Basis and Purpose of the FTC rule is the following discussion of the nature of door-to-door sales:

"While direct selling usually by-passes both the retailer and the wholesaler to reach the consumer, direct selling methods are used by many other merchants who maintain retail or wholesale businesses. For example * * * direct sellers operating out of local business establishments include vendors of * * * storm windows and doors * * *." 37 F.R. 22936, fn. 24 (1972).

In discussing the practice of disreputable door-to-door salesmen who misrepresent the price and quality of their wares, the legislative history of the FTC rule points to the example of a woman who paid $600 for a new roof which she could have purchased for less from a local contractor. *Id.* at 22939, fn. 49.

Both the Ohio Act and the FTC rule contain language which excludes certain transactions from their coverage. The FTC rule excludes the following transaction from the term "door-to-door sale":

"(6) [A transaction] pertaining to the sale or rental of real property, to the sale of insurance, or to the sale of securities or commodities * * *." *Id.* at 22949.

The legislative history states the following with regard to the real property exclusion:

"With regard to the real property provision, it is emphasized that it is not intended to apply to the sale of goods or services such as siding, home improvements, and driveway and roof repairs." *Id.*

Another exclusion to the term "door-to-door sale" in the FTC rule reads as follows:

"(5) [a transaction] in which the buyer has initiated the contact and specifically requested the seller to visit his home for the purpose of repairing or performing maintenance upon the buyer's personal property * * *."

The legislative history states the following with regard to the personal property exclusion:

"The term 'personal property' is used in its legal sense to limit application of the exception to property that is not real property, i.e. land, buildings, and the like. Thus this exception may not be used in transactions such as the sale of driveway resurfacing, aluminum siding, roofing materials or treatment, landscaping, [or] repairs to the home * * *." *Id.* at 22947.

Thus, it seems without question that the FTC rule upon which the Ohio Act was modeled regarded the installation and sale of roofing materials, windows, doors, aluminum siding, and the like as constituting "consumer goods or services." See Herdeg & Carter, Ohio Consumer Law (2 Ed.1989) 98, Section 5.02. It must be assumed that in adopting the exact definition of "consumer goods or services" contained in the FTC rule, the General Assembly was clearly aware of the scope of that definition and intended the Ohio Act to be consistent and uniform therewith. See *Martinelli,* 66 Ohio St.2d at 48, 20 O.O.3d at 40, 419 N.E.2d at 1083, fn.

We are also convinced by the legislative scheme that the General Assembly did not intend to exclude home remodeling products and services from the definition of "consumer goods or services." The legislature saw fit to include within the statute a relatively long list of exceptions to the definition of "consumer goods or services," including one for the sale and rental of real property, without excluding from the definition home improvement products and services. See R.C. 1345.-21(F)(1) through (6).

We conclude that had the legislature wished to exclude from the definition those types of goods which require installation or become affixed to the consumer's household, it would have done so within the enumerated exceptions. See *Beck v. Trane* (Dec. 19, 1990), Hamilton App. No. C–890610, unreported, 1990 WL 209688; *Hines v. Thermal–Gard of Ohio, Inc.* (1988), 46 Ohio Misc.2d 11, 13, 546 N.E.2d 487, 489.

We derive further support for our determination that home improvement products and services fall within the purview of the Act from other Ohio courts which have so concluded. See, *e.g., Beck v. Trane Co.* (Dec. 19, 1990), Hamilton App. No. C–890610, unreported, 1990 WL 209688 (heating and air conditioning system); *Cook v. Stevens* (1988), 44 Ohio App.3d 135, 541 N.E.2d 628 (window screen frames); *Edgell v. Aurora Builders, Inc.* (Dec. 12, 1985), Cuyahoga App. No. 49827, unreported, 1985 WL 4344 (interior remodeling); *Hines v. Thermal–Gard of Ohio, Inc.* (1988), 46 Ohio Misc.2d 11, 546 N.E.2d 487 (replacement windows).

Furthermore, in the context of interpreting the Ohio Consumer Sales Practices Act, R.C. 1345.01 *et seq.*, the Attorney General has defined the term "consumer services" in the following manner:

" 'Services' means performance of labor for the benefit of another. Services include, but are in no way limited to, the construction of a single-family dwelling unit by a supplier on the real property of the consumer." Ohio Adm.Code 109:4–3–01(C)(2).

The Attorney General's interpretation lends additional support to the proposition that construction-type services such as roofing and siding fall squarely within the definition of a "consumer good or service."

We note that other jurisdictions have also patterned consumer legislation after the FTC rule. For example, the New York Home Solicitation Act contains the same definition of "consumer goods or services" as the Ohio Act. See McKinney's Personal Property Law, Section 425 *et seq.* The New York courts have interpreted this definition to encompass home remodeling goods and services. In *Donnelly v. Mustang Pools* (1975), 84 Misc.2d 28, 374 N.Y.S.2d 967, the court held that an agreement entered into between a buyer and a construction company for the construction of an in-ground swimming pool at the residence of the buyer was a "consumer transaction" within the meaning of the statute defining such a transaction as one primarily for personal, family or household purposes. See, also, *Hollywood Decorators, Inc. v. Lancet* (1983), 118 Misc.2d 1096, 461 N.Y.S.2d 955 (interior remodeling).

Finally, we believe that it is manifestly unreasonable to conclude that the General Assembly would have intended to exclude dealers of home improvement products and services from the coverage of the Act. The home remodeling industry is not devoid of flim-flam artists and high-pressure salesmen who fast-peddle expensive services such as roofing and siding to the consumer. See FTC's Statement of Basis and Purpose (1972), 37 F.R. 22946, fn. 114. Without a clear statutory directive, we cannot carve out a judicial exception to the statute which would effectively exempt an entire class of home solicitors from the coverage of the Act.

In *Tambur's, Inc. v. Hiltner, supra,* the court of appeals further reasoned that because aluminum siding could not be returned to the seller in its original condition once it is installed, it could not be the subject of a home solicitation sale. Bauer argues that this reasoning should be applied to the present case. Again, we must disagree.

R.C. 1345.22 states in pertinent part:

"Where a home solicitation sale requires a seller to provide services, he shall not commence performance of such services during the time in which the buyer may cancel."

This legislative pronouncement is clearly intended to put the risk on the home improvement contractor who begins performance before giving the consumer proper notice of the right to cancel. Were we to interpret this provision in the manner advocated by Bauer, then a home improvement contractor could easily circumvent the Act merely by beginning and completing performance within the cancellation period.

Thus, we conclude that a home improvement contractor, such as Bauer, who completes performance of the contract prior to giving proper notice to the buyer of the right of cancellation, may not rely on this fact alone to avoid compliance with the notification requirement of the Act. See *Edgell v. Aurora Builders, Inc.* (Dec. 12, 1985), Cuyahoga App. No. 49827, unreported, 1985 WL 4344; *Hines v. Thermal–Gard of Ohio, Inc.* (1988), 46 Ohio Misc.2d 11, 14, 546 N.E.2d 487, 490.

We further conclude that *Reichert v. Ingersoll, supra,* is inapplicable to the case at bar. The trial court based its determination that rescission was an inappropriate remedy for affixed roofing material on the *Reichert* court's holding that rescission is not a proper remedy where there has been a substantial change in the condition of the subject of the consumer transaction. *Id.,* 18 Ohio St.3d at 224, 18 OBR at 285, 480 N.E.2d at 806.

The *Reichert* case was decided under the Ohio Consumer Sales Practices Act, specifically R.C. 1345.09(C), which provides that any action for rescission must occur before any substantial change in the condition of the subject of the consumer transaction.

■ The Home Solicitation Sale Act contains no comparable language, and merely requires that the buyer return the goods in the same quantity as delivered, subject to reasonable wear or use. R.C. 1345.27. The buyer must take reasonable care of the goods before cancellation and for twenty days thereafter, but owes no further duty of care. *Id.*

We note that applying the rationale of *Reichert* to the Act would result in the same outcome as applying the reasoning of *Tambur's.* The home remodeling contractor who fully performs the contract within the cancellation period would be able to completely avoid compliance with the Act merely because the materials used to provide the service underwent a substantial change during installation. We do not believe the legislature intended such a result.

In light of the foregoing, we conclude that the legislature intended for the definition of "consumer goods or services" to include home improvement products and services such as roofing material, replacement windows and doors, aluminum

siding, and the like. Moreover, we find that the legislature intended transactions such as the one under consideration to be subject to the Act.

Having concluded that home improvement contracts such as the one in the present case are included within the scope of the Act, we must now address whether Bauer is subject to the exception contained at R.C. 1345.21(A)(4). This exception excludes from the definition of a "home solicitation sale" a transaction which takes place under the following circumstances:

"(4) The buyer initiates the contact between the parties for the purpose of negotiating a purchase and the seller has a business establishment at a fixed location in this state where the goods or services involved in the transaction are regularly offered or exhibited for sale[.]"

The trial court determined that custom-ordered products such as those found in the subject transaction could not be regularly offered or exhibited for sale. Moreover, the trial court found that the service component of these types of contracts could not be offered or exhibited for sale at a fixed location. Accordingly, the trial court concluded that the exception did not apply to the subject transaction, and that the transaction involved in this case was a home solicitation sale. We believe the trial court erred in so concluding.

The record is clear that the appellees initiated the contact with Bauer for the purpose of negotiating the purchase of a new roof and replacement windows. Moreover, Bauer has a business establishment at a fixed location in this state. The issues for resolution then become: (1) whether a seller must exhibit the exact product ultimately purchased by the buyer; and (2) whether a service can be regularly exhibited for sale at a fixed location.

We first note that there is no comparable exception in the FTC rule to look to for guidance in resolving this issue. Several Ohio courts have determined that custom-made goods of the type under consideration necessarily cannot be regularly offered or exhibited for sale, nor can the installation of such products be regularly offered or exhibited at a fixed location. See, e.g., Cook v. Stevens, supra. We disagree.

In the present case, the record clearly indicates that Bauer displays roofing, siding, windows, doors, shutters, roof vents, and other types of finished home remodeling products at its warehouse-showroom. Furthermore, Bauer's warehouse is clearly marked, and customers regularly come there to transact business.

Appellees purchased from Bauer a number of Owens–Corning Oakridge twenty-five-year roofing shingles, several replacement windows, and a patio door. Bauer ordered the shingles and the door because it did not keep them in stock, and the windows had to be ordered to fit the measurements of appellees' window

openings. The record clearly shows, however, that a sample of each of these items is regularly exhibited for sale at Bauer's place of business.

The clear purpose of the Act is to provide the consumer with a weapon against high-pressure sales tactics occurring in the home. See *Martinelli,* 66 Ohio St.2d at 50, 20 O.O.3d at 41, 419 N.E.2d at 1084. When the buyer contacts the seller and requests that the seller come to his or her home to negotiate the sale of a product which the buyer could have purchased at the seller's place of business, the buyer is no longer subject to the evils against which the Act is designed to protect.

We conclude that the purposes of the Act are effectuated when a business exhibits, at a fixed location in this state, a sample of the product which the buyer wishes to purchase. Merely because the seller must order a larger number or different size of the sample item to accommodate the customer does not defeat the logic of the exception. To hold otherwise would require a seller to keep in stock every conceivable color, size, and permutation of the goods in which it deals. We do not believe that the legislature intended such an absurd result.

In addition, while Bauer may not regularly offer its services at a fixed location, it certainly exhibits for sale at a fixed location the types of services in which it engages. The buyer is placed on notice that Bauer's offers home remodeling services by virtue of the types of products it displays, and he or she may contract for those services at Bauer's place of business at the same time the home remodeling goods are selected. Moreover, the name "R. Bauer & Sons Roofing and Siding, Inc." displayed at its business clearly exhibits to the consumer the types of services which Bauer offers for sale.

We believe that the foregoing facts are sufficient to place Bauer within the exception to a home solicitation sale set forth in R.C. 1345.21(A)(4). Therefore, Bauer was not in violation of the Act and is entitled to payment from appellees of the full contract price. Accordingly, we find Bauer's assignments of error to be well taken, and overrule appellees' sole cross-assignment of error.

Moreover, since we have concluded that the subject transaction was excepted from the coverage of the Act, we find that the trial court also erred in granting attorney fees to appellees.

In view of the above, the judgment of the Montgomery County Court of Common Pleas is hereby reversed in part and affirmed in part. This matter will be remanded to the trial court for further proceedings consistent with this opinion.

*Judgment accordingly.*

WOLFF and GRADY, JJ., concur.