**UNITED CONSUMERS CLUB, Appellant,**

**v.**

**GRIFFIN, Appellee.**

[Cite as *United Consumers Club v. Griffin* (1993), 85 Ohio App.3d 210.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 61543.

Decided Jan. 25, 1993.

*Marc N. Silberman,* for appellant.

*Anthony J. Cotton,* for appellee.

JOHN F. CORRIGAN, Presiding Judge.

Plaintiff the United Consumers Club (the "Club") appeals from the judgment of the trial court entered in favor of defendant Shirley Griffin in plaintiff's action for breach of contract. For the reasons set forth below, we reverse.

I

In July 1990, plaintiff filed this action for breach of a Club membership contract which defendant signed on December 13, 1989. Defendant filed an answer in which she alleged that she had cancelled the contract pursuant to R.C. 1345.21 of the Home Solicitation Sales Act, and the matter proceeded to trial on February 15, 1990.

For its case, the Club presented the testimony of its Vice President, Raymond Schoenfeld. Schoenfeld testified that the Club is a nationwide buyers' club which sells various products to its members at discounted prices. The Club first contacts prospective members by telephone and asks for permission to send them literature about the Club through the mail. If such information is desired, the prospective members receive brochures explaining the nature of the Club and visitor's passes. Following a visit using the pass, the Club employees allow the prospective members to browse, and solicit membership agreements. All membership contracts are executed at the Club's Highland Heights place of business. No negotiations are conducted by telephone.

Schoenfeld further testified that defendant signed a membership contract in the amount of $990 on December 13, 1989. She paid $290 of this sum by credit card, and financed the remainder. On December 14, 1989, defendant orally advised the Club that she wished to cancel her membership, and on December 15, 1989, defendant tendered a letter to the same effect. Thereafter, defendant's credit card issuer debited the $290 down payment, and the finance company billed plaintiff for the $700 balance which remained unpaid as of the date of trial.

Defendant next testified on cross-examination that although she was initially solicited by telephone, she signed the membership agreement at the Club's Highland Heights place of business.

For her case, defendant testified that the Club initially solicited her by telephone, and asked for permission to send her literature in the mail. She agreed to receive the literature because she had been contemplating joining a wholesale club. Defendant subsequently received a pass to visit the Club's Highland Heights place of business, and Club personnel called defendant on two other occasions to invite her to use the pass. Thereafter, on December 13, 1989, defendant went to the Club and was talked into signing a membership contract. Later that night, defendant attempted to cancel the membership but was told that she would not be permitted to do so. The next day, defendant obtained counsel and tendered a written cancellation.

Following the close of the evidence, the trial court concluded that the matter was governed by the Home Solicitation Sales Act, and that defendant properly cancelled her membership pursuant to R.C. 1345.21. The Club now appeals.

## II

The Club raises two interrelated assignments of error:

"The trial court erred in holding that the contract between plaintiff-appellant and defendant-appellee, made and negotiated solely at the plaintiff-appellant's place of business, constituted a 'home solicitation sale' pursuant to O.R.C. section 1345.21 and was therefore subject to a three (3) day cancellation period.

"The trial court erred in rendering judgment for the defendant-appellee by applying the case *Brown v. Martinelli* to the transaction between the parties."

Pursuant to R.C. 1345.22, a buyer has the right to cancel a home solicitation sale until midnight of the third business day after the day on which the buyer signs an agreement or offer to purchase.

"A home solicitation sale" is in turn defined as:

"a sale of consumer goods or services in which the seller or a person acting for him engages in a personal solicitation of the sale at a *residence of the buyer*, including solicitations in response to or following an invitation by the buyer, and the buyer's agreement or offer to purchase is *there given* to the seller or a person acting for him, *or* in which the buyer's agreement or offer to purchase is made *at a place other than the seller's place of business*. It does not include a transaction or transactions in which:

" * * *

"(2) The transaction was conducted and consummated entirely by mail or by telephone if initiated by the buyer, and without any other contact between the seller or his representative prior to the delivery of goods or performance of the service;

"(3) The final agreement is made pursuant to prior negotiations in the course of a visit by the buyer to a retail business establishment having a fixed permanent location where the goods are exhibited or the services are offered for sale on a continuing basis[.]" (Emphasis added.) R.C. 1345.21(A).

With respect to the first exclusion set forth above, we note that the sale of consumer goods and services which is consummated solely by means of telephone solicitation initiated by the seller at the residence of the buyer constitutes a "home solicitation sale." See *Brown v. Martinelli* (1981), 66 Ohio St.2d 45, 20 O.O.3d 38, 419 N.E.2d 1081, syllabus. The court explained:

"We note first that in the 1974 revision of the Act the General Assembly manifested a general intention to broaden the definition of 'home solicitation sale' by addition of the wording, 'or in which the buyer's agreement or offer to purchase is made at a place other than the seller's place of business.' More

importantly, the General Assembly in declining to adopt *in toto* the exclusionary language respecting mail and telephone solicitation sales appearing in the Federal Trade Commission rule of which it was clearly aware, and excluding only mail and telephone solicitation sales *initiated by the buyer*, clearly manifested an intention to give to Ohio consumers greater protection than that afforded under the federal rule by including in the 'home solicitation sale' definition telephone solicitation sales initiated by the *seller*. To conclude otherwise would render nugatory the phrase 'initiated by the buyer,' since we can perceive of no other logical reason for the insertion of such wording other than to delineate the meaning and scope of the 'home solicitation sale' definition in R.C. 1345.21(A). Such conclusion is in accord with the 'basic presumption in statutory construction that the General Assembly is not presumed to do a vain or useless thing, and that when language is inserted in a statute it is inserted to accomplish some definite purpose.' *State, ex rel. Cleveland Electric Illum. Co., v. Euclid* (1959), 169 Ohio St. 476, 479 [8 O.O.2d 480, 482, 159 N.E.2d 756, 759].

"Finally, we observe that while the evils which the Act endeavors to proscribe may be greater in the context of a consumer sale accomplished by in-person solicitation, such evils nonetheless exist, in a diminished form, when such sale is accomplished through telephone solicitation, a fact apparent in the statutory regulatory scheme adopted by the General Assembly." (Emphasis *sic*.) *Id.* at 49–50, 20 O.O.3d at 41, 419 N.E.2d at 1084.

■ We further note, with respect to the second exclusion, that "negotiation" is

" 'a process of submission and consideration of offers until an acceptable offer is made, and accepted, or until it becomes apparent that no acceptable offer will be made. The brevity or the length of the haggling does not remove it from the definition of negotiation. If the first offer is accepted, the negotiation is concluded and a contract is made, just as it would be if the fifth or the fiftieth offer had been the accepted one.' " *Tambur's, Inc. v. Hiltner* (1977), 55 Ohio App.2d 90, 92, 9 O.O.3d 239, 240, 379 N.E.2d 231, 233, quoting *United States v. John McShain, Inc.* (C.A.D.C.1958), 258 F.2d 422, 424.

Where the final agreement follows negotiations at the seller's fixed, permanent retail establishment, a "home solicitation sale" has not occurred. R.C. 1345.-21(A)(3).

■ In this case, the Club initiated contact with defendant by telephone under its specious "policy" of obtaining "permission" to mail literature. The sale itself was not consummated at that time, however. Rather, under the undisputed chronology of events, the sale followed negotiations in the course of defendant's visit to the Club. Accordingly, a "home solicitation sale" did not occur in this

instance and defendant was therefore not permitted to invoke the three-day cancellation period set forth in R.C. 1345.22.

The judgment of the trial court is reversed and final judgment is entered for plaintiff.

*Judgment reversed.*

HARPER and KRUPANSKY, JJ., concur.