OPINION
This case arises out of a contract between Appellant J W Roofing General Contracting ("J W") and Appellee Frank Papp, for a roof replacement on Papp's home. John Crum owns and operates J W out of his residence at 1600 Chapel Street.
Papp telephoned J W requesting an estimate for replacement of his roof. Subsequently, Crum went to Papp's residence and wrote an estimate which he left in the mailbox. On September 15, 1995, Papp and J W entered a handwritten contract for replacement of Papp's roof based on the estimate. Papp gave Crum a down payment for the work. Shortly thereafter, the parties signed a typed contract which had the exact language of the handwritten contract.
At no point in time prior to execution of the contract was Papp aware of any business address or location for J W. Additionally, the contract did not contain a notice to the buyer of his right to cancel the contract within three days.
J W began the work on September 25, 1995, and completed it five days later. Papp paid J W pursuant to the contract. Approximately ten days after the work was completed, the roof began leaking. Papp filed suit for breach of contract, negligence and violation of the Consumer Sales Practices Act on September 30, 1997.
On May 10, 1999, Papp filed a motion for summary judgment arguing that there were no genuine issues of material fact that J W was in violation of the Home Solicitation Sales Act. J W filed a cross-motion for summary judgment on June 14, 1999 claiming that summary judgment in its favor was proper due to Papp's spoliation of evidence. The trial court overruled J W's motion and sustained Papp's, awarding Papp $14,625.00 in damages.
J W appeals this decision raising the following two assignments of error:
 The trial court erred in granting Plaintiff-Appellee's motion for summary judgment since there exists a genuine issue of material fact as to whether the contract between Defendant-Appellant and Plaintiff-Appellee falls within an exception to the Home Solicitation Sales Act.
 Even assuming that Plaintiff-Appellee was entitled to summary judgment, the trial court abused its discretion in failing to have a damages hearing to determine the amount of damages.
J W has appealed the decision of the trial court sustaining Papp's motion for summary judgment. According to Civ. R. 56, a trial court should grant summary judgment only when the following tripartite test has been satisfied: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64,66.
The moving party has the burden to establish that there is no genuine issue as to any material fact. Id. This burden can only be met by identifying specific facts in the record which indicate the absence of genuine issues of material fact. Dresher v. Burt
(1996), 75 Ohio St.3d 280, 293. By establishing that the non-moving party's case lacks the necessary evidence to support its claims, the moving party has successfully discharged its burden. Id. at 289-90.
Once this burden has been met, the non-moving party then has a reciprocal burden as outlined in Civ. R. 56(E), which provides the "adverse party may not rest upon the mere allegations or denials of the party's pleadings," but "must set forth specific facts showing there is a genuine issue for trial." See id. at 293. Civ. R. 56(E) provides that if the non-moving party does not respond or outline specific facts to demonstrate a genuine issue of material fact, then summary judgment is proper. Id.
 I
In its first assignment of error, J W alleges the trial court erred in its decision sustaining summary judgment, as there was a genuine issue of material fact whether the contract between Papp and J W was in violation of the Home Solicitation Sales Act ("the Act"). We must first determine if the contract is covered by the Act.
R.C. 1345.21(A) defines "home solicitation sale" as:
 [A] sale of consumer goods or services in which the seller or a person acting for him engages in personal solicitation of the sale at a residence of the buyer, including solicitations in response to or following an invitation by the buyer, and the buyer's agreement or offer to purchase is there given to the seller or a person acting for him, or in which the buyer's agreement or offer to purchase is made at a place other than the seller's place of business.
In the present case, Papp contacted J W for an estimate to replace his roof. The contract for roofing services was entered into at Papp's home. This was a solicitation in response to an invitation by the buyer as allowed by the statute. Additionally, the agreement was made at a place other than the seller's place of business, in particular, the buyer's home. Therefore, the method of the sale as required in this portion of the statute has been satisfied.
R.C. 1345.21 proceeds to include several exceptions to a home solicitation sale. J W argues that one of these exceptions applies to the contract at issue. The statute excludes transactions in which "[t]he buyer has initiated the contact between the parties and specifically requested the seller to visit his home for the purpose of repairing or performing maintenance upon the buyer's personal property." R.C. 1345.21(A) (6). We addressed the repair of personal property exclusion by analysis of the federal equivalent to Ohio's statute in R. Bauer SonsRoofing Siding, Inc. v. Kinderman (1992), 83 Ohio App.3d 53,58-59.
Ohio's Home Solicitation Sales Act was modeled after the Federal Trade Commission rule entitled "Cooling-Off Period for Door-to-Door Sales." Section 429.1, Title 16, CFR In fact, in 1974, the Ohio Act was revised so that it was substantially the same as the FTC rule. See Brown v. Martinelli (1981), 66 Ohio St.2d 45,48. The FTC rule has the exact same exception to its definition of "door-to-door sales" as Ohio's exception to "home solicitation sales" as stated above in R.C. 1345.21(A) (6). The legislative history for the repair to personal property exception to the FTC rule revealed that the exception was not intended to apply to real property such as buildings, and particularly may not be used to exclude from the Act "transactions such as the sale of driveway resurfacing, aluminum siding, roofing materials or treatment, landscaping [or] repairs to the home." Bauer, supra, citing 37 F.R. 22947 (1972). This statement confirms that the repair to personal property exceptions will not operate to exclude home improvement contracts, such as roofing, from either the FTC rule or the Ohio Act.
The next hurdle this contract faces is whether it qualifies as a contract for consumer goods or services as defined in R.C.1345.21(E). "Consumer goods and services" is defined as "goods or services purchased, leased, or rented primarily for personal, family, or household purposes, including courses or instruction or training regardless of the purpose for which they are taken." Id.
J W relies on Tambur's, Inc. v. Hiltner (1977), 55 Ohio App.2d 90, in its contention that the contract between the parties does not constitute a sale of consumer goods or services.
This issue has been addressed by this and several other courts since Tambur's, which have found that home improvement contracts such as roofing do constitute contracts for consumer goods and services. See Bauer, supra; Hines v. Thermal-Gard ofOhio, Inc. (1988), 46 Ohio Misc.2d 11, 12; Beck v. Trane Co. (Dec. 19, 1990), Hamilton App. Nos. C-890610, C-890623, unreported, p. 3; Clemens v. Duwel (1995), 100 Ohio App.3d 423, 431-32; Collinsv. Kingsmens Enterprises, Inc. (Jan. 19, 1995), Cuyahoga App. No. 66433, unreported, p. 2. The Tambur's court made a conclusory assertion that siding, as a building material, is not purchased primarily for personal, family or household purposes. Tambur's,supra, at 94. As stated by the Hines court, "[i]t is only logical to conclude that goods and services utilized in remodeling or making additions or improvements to a family dwelling unit satisfy such purpose." Hines, supra at 12. More importantly, the statute contains a list of goods and services which do not qualify as "consumer goods or services" under the Act, and none of these exceptions would encompass home improvement contracts. Id.; R.C.1345.21(F).
In addition, the Tambur's court relied on the language in R.C. 1345.23(B) (2) and 1345.27 to conclude that a contract for repair or replacement of aluminum siding is not a contract for consumer goods and services because the goods could not be returned to the seller in substantially the same condition. R.C.1345.23(B) (2) no longer contains the language quoted by theTambur's court. However, R.C. 1345.27 provides:
 [W]ithin a reasonable time after a home solicitation sale has been cancelled or an offer to purchase has been revoked, the buyer upon demand must make available to the seller any goods delivered by the seller pursuant to the sale. The goods made available shall not have been diminished in quantity nor subjected to unreasonable wear or use. * * *
The Tambur's court reasoned that siding which has been attached to the home cannot be returned to the seller in substantially the same condition upon cancellation of the contract and therefore cannot be considered "consumer goods." Tambur's, supra at 94. J W contends that this is also true for roofing materials.
This argument is flawed because it assumes that the roofing material has already been installed. The determination of whether the Act applies to a contract must be made at the time the contract is entered. See Hines, supra at 12. At the time the contract is entered, the roof shingles have not yet been installed on the home and thus can be returned to the seller in the same condition as received.
Further, Tambur's and J W fail to take into consideration R.C. 1345.22, which provides: "Where a home solicitation sale requires a seller to provide services, he shall not commence performance of such services during the time in which the buyer may cancel." Pursuant to the Act, a seller must notify the buyer in writing that he may cancel the contract within three days of the sale. R.C. 1345.23(B). Until the seller has provided the buyer with this notice of cancellation, the buyer may cancel the contract at any time. R.C. 1345.23(C) (emphasis added). This clearly places the risk on the contractor if he begins performance prior to notifying the buyer of his right to cancel the contract. See Bauer, supra at 61; Clemens, supra at 431. In the present case, since J W did not at any point provide Papp with notice of his right to cancel, Papp's ability to cancel the contract never expired. Since a seller is not permitted to begin performance of a contract until the buyer's right to cancel has expired, R.C.1345.27 does not have the effect of excluding home improvement contracts, such as the one in the present case, from the definition of "consumer goods and services."
Based on the foregoing analysis, the contract between Papp and J W is undoubtedly covered by the Act. It is equally clear that the Act has been violated in this case. As previously mentioned, R.C. 1345.23(B) provides that every home solicitation sales contract must conspicuously provide a statement notifying the buyer of his right to cancel by midnight of the third business day following the transaction. There is no dispute that this notice was never provided in the present case. Consequently, Papp's ability to cancel the contract never expired pursuant to R.C. 1345.23(C). In Bauer, this court held that the seller's full performance of the contract did not allow him to avoid compliance with the notification requirement. Bauer, supra at 61; Clemens,supra at 431.
There is no dispute over the material facts in this case. The dispute between the parties is whether Papp was entitled to judgment as a matter of law under the Home Solicitation Sales Act. As established above, there is no question the Act applies to the contract in question and was violated. Therefore, the trial court did not err in sustaining Papp's motion for summary judgment. Accordingly, J W's first assignment of error is overruled.
 II
In its second assignment of error, J W argues that even if we find Papp was entitled to summary judgment, the trial court abused its discretion in awarding damages without a hearing. In awarding damages based on summary judgment, the trial court in effect held that there was no genuine issue as to any material fact and Papp was entitled to $14,625.00 as a matter of law.
The summary judgment standard requires the moving party to outline specific facts in the record which demonstrate there are no genuine issues of material fact. Dresher, supra at 293. If the moving party meets this burden, the non-moving party has a reciprocal burden to identify specific facts in the record indicating there are genuine issues of material fact. Id. If the non-moving party does not respond, summary judgment is proper.Id.
Papp argued in his motion for summary judgment that he was entitled to the cost to repair damages to the roof, which amounted to replacement of the entire roof. He attached the invoice that he paid from Bauer Roofing Siding Co. for $4875.00, and his own affidavit stating that replacement of the roof was necessary to correct the problems caused by J W. Additionally, Papp maintained that he was entitled to treble these damages pursuant to R.C. 1345.09. Further, he cited Betleyoun v. Dacraft, Inc.
(Nov. 27, 1990), Clark App. No. 2694, unreported, for the proposition that cost to repair is the proper measure of damages for breach of a home improvement contract. Papp sufficiently discharged his burden as the moving party.
J W does not deny that Papp was entitled to treble damages, but does contest the amount to be trebled. However, J W did not challenge this amount in the trial court. There is no allegation, nor support from the record in any of J W's motions or responses in the trial court that the damages requested by Papp were inappropriate. Therefore, J W did not meet its reciprocal burden pursuant to Civ. R. 56(E) and summary judgment as to damages was proper. Accordingly, J W's second assignment of error is overruled.
Judgment of the trial court is affirmed.
YOUNG, J. and GLASSER, J., concur.
(Honorable George M. Glasser, Retired from the Court of Appeals, Sixth Appellate District, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio).
Copies mailed to:
Jean M. Steigerwald
Barry S. Galen
Hon. Patrick J. Foley