OPINION *Page 2 
{¶ 1} Defendant-Appellant Willie G. Harris appeals from the May 8, 2008, and June 12, 2008, Judgment Entries of the Canton Municipal Court granting judgment in favor of Plaintiff-Appellee Altek Environmental Service Company on its claim and dismissing Appellant's counter-claim.
 STATEMENT OF THE FACTS AND CASE {¶ 2} For purposes of this appeal, the relevant facts are as follows:
 {¶ 3} Appellant Willie G. Harris was the owner of residential property located on Penn Place which was damaged by fire in late August, 2007. At the time of the fire, Appellant was renting the home to members of his family.
 {¶ 4} Appellant contacted his insurance company, Allstate, and an adjuster visited the house and evaluated the damages. Appellant then contacted Appellee Altek Environmental Services Company, a company which does fire and water damage restoration in addition to other cleaning services, and on or about August 27, 2007, Appellant signed a Customer Communication/Work Authorization which was prepared by Appellee. This document did not include a specific amount for the services. A handwritten notation on the work authorization stated that Allstate would supply the estimate. (T. at 37).
 {¶ 5} In addition, Appellant also signed a document captioned "Ohio's Home Solicitation Act Notice of Cancellation" that was provided to him by Appellee. (T. at 12). This document stated that Appellant had three days to cancel the transaction and provided that such document should be signed and delivered or mailed to Altek Restoration Services at the address therein provided. The document also contained a *Page 3 
place for Appellant to sign acknowledging receipt of said document. This document is dated August 25, 2007, however, Appellant testified that he signed this document on August 27, 2007, at the same time he signed the Work Authorization. (T. at 15). This timing is confirmed by Appellee. (T. at 33-34). Appellee testified Appellant was provided with a copy of the signed documents. (T. at 35).
 {¶ 6} Appellee commenced clean-up/restoration work on the property and had been there working for approximately two weeks when Appellant abruptly told Appellee to stop work on the residence.
 {¶ 7} Appellee provided Appellant with a bill for the work that had been performed dated September 13, 2007. (T. at 16-17).
 {¶ 8} Appellant provided Appellee with a check for the full amount requested. (T. at 16-18). At that time Appellant did not express to Appellee that he was not satisfied with the work done on the property or that he felt the bill was too high. (T. at 17-18). However, Appellant cancelled the check the following morning. Id.
 {¶ 9} Appellant received over $32,000 from his insurance company to cover the damage to the property. (T. at 24).
 {¶ 10} Appellee Altek commenced a collection action in September, 2007, alleging Appellant Harris failed to pay for the fire restoration work that had been done on the property. Further, damages were alleged due to Appellant placing a stop payment on the check that had been presented for payment for the services rendered.
 {¶ 11} Appellant filed an Answer and Counterclaim in November of 2007. In his counterclaim, Appellant Harris alleged Appellees committed fraudulent misrepresentations, violations of the Consumer Sales Practices Act and bad faith. *Page 4 
 {¶ 12} A trial to the Court was conducted on April 4, 2008. Judgment was granted for Appellee in the sum of $6,336.95 on the contract claim. Appellant's counterclaim was dismissed.
 {¶ 13} In the May 8, 2008, Judgment Entry, the trial court also granted judgment against Appellant Harris for "overdraft fees in an amount not to exceed $500" and allowed Appellees until June 9, 2008 to present additional evidence to the court "of actual charges incurred". Appellant Harris objected to any consideration of additional post-trial evidence, in camera or otherwise. The trial court then scheduled and conducted an additional evidentiary hearing on June 12, 2008 regarding the issue of overdraft fees.
 {¶ 14} On June 12, 2008, the trial court reviewed additional documentation and subsequently issued a second judgment entry resolving the outstanding issue by awarding Appellees nothing on their claim for overdraft charges. The trial court also specified this June 12, 2008, entry as its final appealable order
 {¶ 15} Appellant now appeals these two entries to this Court, raising the following assignments of error for review:
 ASSIGNMENTS OF ERROR {¶ 16} "I. THE TRIAL COURT ERRED AS A MATTER OF LAW BY ENFORCING THE CONTRACT IN FAVOR OF PLAINTIFFS-APPELLEES AND AGAINST DEFENDANT-APPELLANT.
 {¶ 17} "II. THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT FOUND THE PLAINTIFFS-APPELLEES HAD NOT VIOLATED THE CONSUMER SALES PRACTICES ACT." *Page 5 
 I. {¶ 18} In his first assignment of error, Appellant argues trial court erred in enforcing a contract in this case. We disagree.
 {¶ 19} The elements of a contract include the following: an offer, an acceptance, contractual capacity, consideration (the bargained-for legal benefit or detriment), a manifestation of mutual assent, and legality of object and of consideration. Kostelnik v. Helper, 96 Ohio St.3d 1,2002-Ohio-2985, 770 N.E.2d 58, ¶ 16. See also Helle v. Landmark,Inc. (1984), 15 Ohio App.3d 1, 472 N.E.2d 765. A party asserting a contract must prove by a preponderance of the evidence the existence of the elements of the contract. Cooper Pachell v. Haslage (2001),142 Ohio App.3d 704, 707, 756 N.E.2d 1248.
 {¶ 20} Upon review of the trial court transcript, we find Appellant testified that after the fire he contacted Altek, that someone from Altek, Alex Kaplan, came to his home, and that he and that representative discussed cleaning and restoration to be performed at the Penn Place property. (T. at 5-6). Appellant also testified that he told Mr. Kaplan he wanted the house "livable as soon as possible". (T. at 6-7). Appellant further testified he did not sign any paperwork at that initial consultation, but that Mr. Kaplan came back a "couple days" later and he signed certain documents at that time, including a document labeled Customer Communication/Work Authorization. (T. at 7-8). He also stated that when he signed this document he was "officially requesting Mr. Kaplan do work on the Penn Place address". (T. at 10). Appellant also testified that he was presented with a document at that same meeting title Ohio's Home Solicitation Sales Act and that he signed the bottom of that document. (T. at 12-15). Appellant also *Page 6 
testified he asked Appellee about warranties and/or guarantees for the work and materials. (T. at 91-93). He stated Appellee only offered him a ninety-day warranty and that he was not satisfied with that short of a warranty and thought Appellee was going to change the documents and bring back new ones. Id. He claims he then went down to the property and was surprised to see Altek had begun working. (T. at 93-94). He further testified he never contacted Altek by letter, telephone or otherwise to tell them not to commence work or stop working. (T. at 14-15). Appellant went on to testify that work was done on his property and that on or about September 17, 2007, Mr. Kaplan personally presented him a bill. (T. at 16-17). When presented with the invoice, Appellant paid the bill in full with a check. (T. at 16-18). Appellant then stated he subsequently reviewed the invoice and stopped payment on the check the next morning because he felt he was overcharged for work performed, namely to the linen closet. (T. at 19-21). He stated that he called Appellee and informed him he was stopping payment on the check. Id. Appellant stated that other than the insurance adjuster, who ultimately wrote him a check for in excess of $30,000.00 for damages to the property, he did not get estimates from any other companies or have anyone evaluate the work or review the charges contained in the invoice. (T. at 21-24).
 {¶ 21} Alex Kaplan, the owner of Altek Environmental Services, also testified at trial. He testified that he was contacted by Appellant and that Appellant told him he needed his property to be made "liveable as quick as possible". (T. at 29). He stated that he personally went to the property where the fire occurred, and then went to Appellant's residence for an initial consultation on that same day. (T. at 29-30). Mr. Kaplan testified that he presented Appellant with four documents at that initial meeting: *Page 7 
(1) a Customer Authorization form; (2) an "Ohio Home Solicitation Act-Notice of Cancellation" form; (3) an informational document concerning insurance; and (4) a health form. (T. at 31-36). Mr. Kaplan further stated that he and Appellant discussed the fact that Appellant's insurance company was Allstate and the cost of the restoration services would be paid by insurance. (T. at 36-38). Appellee testified that Appellant asked him for a five-year warranty and he told Appellant that whatever new products were installed would come with a manufacturer's warranty and that he would guarantee workmanship for one year. (T. at 53-57). He stated that Altek began working on cleaning and restoring the property that same day and continued work for approximately two weeks, at which time Appellant abruptly requested that he stop work. (T. at 38-40). He stated that he presented Appellant with a bill the next day for services performed, and that he reviewed those charges with Appellant. (T. at 40-49). He further testified that Appellant wrote him a check but then stopped payment on same the following day. Id.
 {¶ 22} Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, syllabus 1.
 {¶ 23} While we find that there are a few discrepancies between the testimony of Appellant and Appellee, such as whether the documents were signed at the initial meeting or a second meeting and whether Appellant notified Appellee that he stopped payment on the check, we find these inconsistencies to be inconsequential to the ultimate decision as to whether an enforceable contract existed in this matter. *Page 8 
 {¶ 24} Initially, Appellant herein argues that any contract which he may have entered into with Appellee was cancelled almost immediately when he signed the "Notice of Cancellation" form provided to him at the meeting where he signed the "Work Authorization" form. Alternatively, Appellant claims that he and Appellee did not have a contract, arguing that there was never a meeting of the minds regarding warranties and guarantees on the work to be performed.
 {¶ 25} With regard to the execution of the "Notice of Cancellation", we find the signing of such document to be irrelevant and the argument behind it to be disingenuous. Appellant acknowledged that it was his intention for Appellees to begin work upon the signing of the work authorization and furthermore, that he never delivered the cancellation notice to Appellee. We therefore find the trial court's determination that Appellant accidentally signed the cancellation line, rather than the line acknowledging that he had been informed that he had the right to cancel, to be reasonable.
 {¶ 26} We further find the contract contained all the necessary elements with the exception of the cost of such services, but that the absence of same is understandable in the context of this being a case where Appellant's homeowner's insurance would be paying for the services based on the estimate prepared by its adjuster. We therefore find that the trial court did not err in finding a contract existed in the case sub judice.
 {¶ 27} Based on the foregoing, we find Appellant's first assignment of error not well taken and hereby overrule same. *Page 9 
 II. {¶ 28} In his second assignment of error, Appellant argues that the trial court erred in not finding Appellee violated the Consumer Sales Practices Act. We disagree.
 {¶ 29} R.C. § 1345.01(A) defines "consumer transactions" as a "sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things."
 {¶ 30} Appellant argues that Appellee violated the CSPA by commencing work prior to the expiration of the "three day" cancellation period and for failing to include material terms in the contract.
 {¶ 31} Home Solicitation Sales are controlled by the CSPA. The failure to comply with the HSSA constitutes a deceptive act or practice in connection with a consumer transaction in violation of the CSPA. Thus, any violation of the HSSA is a violation of the CSPA. See R.C. 1345.28.
 {¶ 32} The Home Solicitation Act is designed to provide a consumer with a weapon against high pressure sales tactics occurring in the home.R. Bauer Sons Roofing Siding, Inc. v. Kinderman (1992),83 Ohio App.3d 53, 63, 613 N.E.2d 1083, citing Brown v. Martinelli (1981),66 Ohio St.2d 45, 50, 419 N.E.2d 1081.
 {¶ 33} Revised Code § 1345.21 (A) defines a "home solicitation sale" as:
 {¶ 34} "* * * a sale of consumer goods or services in which the seller or a person acting for the seller engages in a personal solicitation of the sale at a residence of the buyer, including solicitations in response to or following an invitation by the buyer, and the buyer's agreement or offer to purchase is there given to the seller or a person acting *Page 10 
for the seller, or in which the buyer's agreement or offer to purchase is made at a place other than the seller's place of business. * * *"
 {¶ 35} R.C. § 1345.21 also excepts out certain types of transactions including situations where:
 {¶ 36} "(4) The buyer initiates the contact between the parties for the purpose of negotiating a purchase and the seller has a business establishment at a fixed location in this state where the goods or services involved in the transaction are regularly offered or exhibited for sale.
 {¶ 37} "(6) The buyer has initiated the contact between the parties and specifically requested the seller to visit the buyer's home for the purpose of repairing or performing maintenance upon the buyer's personal property. If, in the course of such a visit, the seller sells the buyer additional services or goods other than replacement parts necessarily used in performing the maintenance or in making the repairs, the sale of those additional goods or services does not fall within this exclusion."
 {¶ 38} Upon review of the record, we find that Appellee stated that Altek Environmental Service Company has a business location of 1022 Spangler in Canton, Ohio, and in such cases, under R.C. § 1345.21(A)(4), a seller is exempt from the HSSA if the buyer initiates the contact between the parties.
 {¶ 39} Furthermore, we find that "necessary repairs" have been found to be an exception under R.C. § 1345.21 (A)(6). See Smaldino v.Larsick (1993), 90 Ohio App.3d 691, 630 N.E.2d 408 (the installation of a new furnace, on a cold, winter night, was a necessary repair and, as such, the work was exempted under R.C. 1345 .21(A)(6)). *Page 11 
 {¶ 40} We find the instant case to be analogous to the case ofPaul Davis Restoration of Cleveland Metro W. v. Karaman, Eighth Dist. App. No. 84824, 2005-Ohio-4017, wherein the court held that the work to be performed by the water damage mitigation company was of an emergency nature since the onslaught of mold, etc. was an immediate concern and that such was exempt from the HSSA.
 {¶ 41} We further find that in the instant case, Appellant requested Appellee to commence work immediately and Appellant never attempted to give notice to Appellee of his desire to cancel within three days.
 {¶ 42} We therefore find the trial court did not err or abuse its discretion in finding that Appellee did not violate the Consumer Sales Practice Act.
 {¶ 43} Appellant's second assignment of error is overruled.
 {¶ 44} For the reasons stated in the foregoing opinion, the judgment of the Canton Municipal Court, Stark County, Ohio, is affirmed.
Wise, J., Hoffman, P. J., and Delaney, J., concur. *Page 12 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Canton Municipal Court, Stark County, Ohio, is affirmed. Costs assessed to Appellant. *Page 1