**CLEMENS, d.b.a. JANUS BUILDERS HOME IMPROVEMENT CONTRACTOR, Appellee and Cross–Appellant,**

**v.**

**DUWEL, Appellant and Cross–Appellee.**

[Cite as *Clemens v. Duwel* (1995), 100 Ohio App.3d 423.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 14722.

Decided Jan. 27, 1995.

*Thomas P. Randolph,* for appellee.

*David M. Duwel,* for appellant.

---

WOLFF, Judge.

David Duwel appeals from the judgment of the Montgomery County Common Pleas Court which ordered him to pay $168.24 to Mark Clemens.

The following is an overview of the facts. Additional facts will be included in our discussion of the assignments of error.

Clemens, who was doing business as Janus Builders, contracted with Duwel to refinish the upstairs bathroom in Duwel's home. In early 1992, Duwel initiated the contact between the parties, and the negotiation of the contract occurred at Duwel's house. The total contract price was $7,370, which included a budget of $1,200 for items which Duwel was supposed to purchase on his own. Among the items that Duwel purchased for Clemens to install were an antique claw foot tub and the tub and shower faucet.

The tub purchased by Duwel was designed for a dual-handled faucet, and Clemens was aware of that when the contract was signed. Before Duwel bought the tub and shower faucet, Clemens admonished him that the Ohio Plumbing Code required an anti-scald valve or an anti-scald faucet to regulate the temperature of the water for a shower. Duwel purchased a dual-handled tub and shower faucet designed for a claw foot, freestanding tub. Clemens saw the faucet when it arrived after performance of the contract had begun, and he did not indicate that there would be a problem with the faucet.

Before Clemens began performing the contract for the upstairs bathroom in July 1992, the parties also entered into a contract to renovate the downstairs bathroom. Disputes regarding the contract for the downstairs bathroom were also litigated in the trial court, but the court's judgment on that contract was not appealed. The trial court ordered Duwel to pay $380.62 to Clemens for the performance of the contract on the downstairs bathroom, and this order will not be disturbed on appeal.

During the performance of the contract for the upstairs bathroom, several disputes arose between the parties. For example, Duwel and his wife decided that they wanted the newly installed lights by the medicine cabinet to be lowered, and they refused to acknowledge that the cost to relocate the lights was an addition to the contract. The largest source of contention between the parties was Clemens's claim that a pressure balance valve, which the plumbing subcontractor informed him was necessary to make the tub and shower faucet comply with the anti-scald requirements of the plumbing code, was an addition to the contract in the amount of $300. Duwel maintained that the price of this valve should have been included in the original contract price because the parties knew what type of faucet was contemplated at the time the contract was signed. The testimony at trial revealed that no two-handled faucet meets the anti-scald requirements. Further, while modifications could be made in the plumbing system of a house to bring a single-handled faucet within the code, nothing would bring a double-handled faucet within the code requirements.

Clemens stopped work on the contract when Duwel would not approve the additions to the contract. Duwel had paid two $2,200 installments on the contract price, for a total of $4,400. In August 1992, after several attempted reconciliations, Clemens filed this action for breach of contract against Duwel for the balance due on the contract. Duwel answered and filed counterclaims alleging that Clemens violated the Consumer Sales Practices Act, R.C. 1345.01 et seq., and the Home Solicitation Sales Act, R.C. 1345.21 et seq., and that Clemens failed to substantially perform the contract. On June 29, 1993, Duwel mailed a "Notice of Cancellation" of the contract to Clemens.

The trial court found that Clemens had substantially performed the contract, and it concluded that Duwel owed Clemens $1,638.62 on the contract. The trial court also concluded that the Home Solicitation Sales Act did not apply to the contract, but it adopted the referee's finding that Clemens had violated the Consumer Sales Practices Act. The court found that Duwel was entitled to $1,850 in actual damages for this violation. The court then offset the amount Clemens owed Duwel, $1,850, from the amounts Duwel owed Clemens, $380.62 for the downstairs bathroom and $1,637.62 for the upstairs bathroom, and the court ordered Duwel to pay Clemens the difference, $168.24, with interest.

Duwel filed a timely notice of appeal, asserting three assignments of error. Clemens filed a cross-appeal, asserting a single assignment of error.

Duwel's First Assignment of Error

"The trial court erred when it found that the home solicitation contract for the upstairs bath came within the exception of Section 1345.21(A)(4), Ohio Revised Code."

Duwel contends that the contract for the upstairs bathroom constituted a home solicitation sale governed by R.C. 1345.21 *et seq.* The Home Solicitation Sales Act applies to all "home solicitation sales," and requires that each such sale be evidenced by a written agreement and include a statement of the buyer's right to cancel the contract until midnight of the third business day after the day on which the buyer signs the contract. R.C. 1345.22 and 1345.23. If the agreement does not include a statement of the buyer's right to cancel, then the buyer has the right to cancel until three days after the seller complies with this requirement. R.C. 1345.23(C). It is uncontested that the written agreement between Clemens and Duwel pertaining to the upstairs bathroom did not contain notice of the right to cancel, and at no time before Duwel mailed his notice of cancellation did Clemens provide Duwel with notice of this right. Thus, if the Home Solicitation Sales Act applied, then Duwel was entitled to cancel the contract.

The referee found that the contract between Clemens and Duwel fell within an exception to the definition of "home solicitation sale," R.C. 1345.21(A)(4), and refused to apply the Act. When ruling on Duwel's objections to the referee's report, the trial court, while acknowledging that Duwel made a persuasive argument, found the reasoning in the referee's report to be sound and overruled the objection. Duwel contends that the trial court erred in determining that Clemens met his burden of proof to demonstrate that this contract fit within an exception to the Home Solicitation Sales Act.

A "home solicitation sale" is defined as "a sale of consumer goods or services in which the seller or a person acting for him engages in a personal solicitation of the sale at a residence of the buyer, including solicitations in response to or following an invitation by the buyer, and the buyer's agreement or offer to purchase is there given to the seller or a person acting for him." R.C. 1345.21(A). Given the facts of the transaction between Clemens and Duwel, this basic definition encompasses their contract; however, R.C. 1345.21(A) excludes certain types of transactions from the basic definition. The trial court found that this contract fit within the exclusion in R.C. 1345.21(A)(4) which states that a home solicitation sale does not include a transaction in which "[t]he buyer initiates the contract between the parties for the purpose of negotiating a purchase and the seller has a business establishment at a fixed location in this state where the goods or services involved in the transaction are regularly offered or exhibited for sale."

Despite an apparent typographical error in the referee's report to the contrary, the party seeking to assert the protection of an exemption from an otherwise mandatory statute bears the burden of proving the facts warranting the exception. *State ex rel. Schaefer v. Montgomery Cty. Bd. of Commrs.* (1967), 11 Ohio App.2d 132, 40 O.O.2d 296, 229 N.E.2d 88. Thus, Clemens bore the

burden of proving that the transaction between himself and Duwel fell within the exception defined in R.C. 1345.21(A)(4).

■ In order to fall within this exception, Clemens had to prove (1) that Duwel initiated the contact between the parties for the purpose of negotiating a purchase, (2) that Janus Builders had a business establishment at a fixed location in Ohio, and (3) that the goods or services involved in the transaction were regularly offered or exhibited for sale at the fixed location. See *R. Bauer & Sons Roofing v. Kinderman* (1992), 83 Ohio App.3d 53, 613 N.E.2d 1083. The parties stipulated that Duwel had initiated the contact, and it is undisputed that the contact was initiated for the purpose of negotiating a purchase. Thus, Clemens met his burden of proof on the first element of the exception.

■ As to the second element of the exception, Clemens had to prove that he had a business establishment at a fixed location in Ohio. It is undisputed that Clemens had a room in his personal residence in Ohio which served as an office for Janus Builders. While that fact is sufficient to prove that Janus Builders had an office in a fixed location in Ohio, it does not, without more, establish that Clemens's home office constituted a "business establishment." The term "business establishment" is not defined in the statute, and virtually no case law has been developed defining the term as used in R.C. 1345.21(A)(4). The definition of "establishment," in a business context, is "a place of business * * * with its furnishings and staff." Webster's New Collegiate Dictionary (1975) 391.

The Ohio Supreme Court gave a lengthy explanation of the meaning of the word "establishment" as used in a previous version of an unemployment statute, R.C. 4141.29(D), which, while not binding in the context before us, is instructive. In *Abnie v. Ford Motor Co.* (1963), 175 Ohio St. 273, 274, 25 O.O.2d 110, 111, 194 N.E.2d 136, 137, the issue before the court was "whether appellees' unemployment arose as a result of a labor dispute at the 'factory, establishment or other premises' at which they were employed." The court held that "[t]he word, 'establishment,' has a clear and natural meaning as a distinct physical place of business." *Id.* at 275, 25 O.O.2d at 113, 194 N.E.2d at 138. In *Abnie,* the court adopted the Massachusetts Supreme Court's discussion of the purpose and meaning of the word "establishment":

"[T]he word 'establishment' as normally used in business and in government, means a distinct physical place of business. * * *

"We think that 'establishment' is meant to embrace premises, not aptly described as a factory, where labor is performed—and without attempting to name them all—such as stores, banks, theatres and other places of amusement, laundries, garages, hotels, restaurants, office buildings, shipyards, newspaper and printing offices, insurance buildings, express and transportation buildings, repair

shops, telephone and telegraph offices, and barber and hairdressing shops."
*Abnie, supra,* quoting *Ford Motor Co. v. Div. of Emp. Security* (1951), 326 Mass.
757, 761–762, 96 N.E.2d 859, 861–862.

The testimony at the evidentiary hearing before the referee revealed that
Clemens's office was a room in the back of the second floor of his residence.
Clemens had a drawing board, a desk, filing cabinets, and some home improve-
ment supply catalogs in his office. It was necessary to walk through Clemens's
house to get to the office; there was no separate entry. From the street, it was
impossible to discern that the Janus Builders office was inside the house.
Clemens engaged in no advertising, not even a listing in the phone book, for his
business. Although Clemens did testify that customers had come to his residence
to enter into a contract, there was no indication that this was a regular practice.
Further, Clemens did not present any evidence that customers generally knew
about his home office or that he regularly invited customers to come to his office.
Clemens stated that his business was "built on referrals and [he did not] operate
a store front, general public, for sale items. * * * [He] was not zoned nor was
[he] intending to have the total retail off-the-street trade." Duwel testified that
he did not know where Clemens's business was located and that he was never
invited to visit Clemens's home office.

As Clemens acknowledged in his testimony and in stipulations, his residence
was in a purely residential zoning district. The Dayton Zoning Code requires
residents in a residential district to obtain a zoning or occupancy certificate to
conduct a "home occupation" as permitted in the zoning code. Dayton Revised
Code of General Ordinances 150.340 *et seq.* A "home occupation" is defined as "a
business, profession, occupation, or trade conducted for gain or support entirely
within a principal residential building, by the resident thereof." *Id.* at 150.341.
Clemens stipulated that he "operated his home improvement business out of his
personal residence" and that he "had no Certificate of Occupancy to operate a
business out of his home."

In her report and recommendation, the referee explained her decision that
Clemens had a business establishment at a fixed location in Ohio as follows:

"In this case there is no dispute that [Clemens's] business was located in Ohio,
at a fixed location in his home. The Referee is not persuaded that the zoning
violation, by operating a business in a residential zone, is relevant to the factual
determination of whether the business was operating in a fixed location at the
time of the transaction. The statute does not require the location to be
permanent, but merely fixed so that if the consumer had the opportunity to
return to the seller's location to execute the agreement, the consumer should not
feel pressured to sign a contract at home, thus eliminating the need for the
protection of the Act."

While we agree with the policy statement in the referee's report, we cannot agree with her application of this policy to these facts. The referee stated that the need for the protection of the Act is eliminated when the consumer has the opportunity to return to the seller's location to sign a contract, and the exception was created to protect the seller in that situation. However, there is no evidence that Duwel had an "opportunity to return to the seller's location." Duwel's testimony that he did not know the location of Clemens's business was not disputed. Clemens himself testified that he did not operate an "off-the-street" retail office, and his business location was not advertised in any manner. The absence of an occupancy permit may not be determinative of this issue; however, it does lend additional support to a finding that Clemens did not intend his home office to constitute a business office to which the general public was invited.

■ We recognize that the definition of "business establishment," as the term is used in R.C. 1345.21(A)(4), should remain flexible to permit the courts to give full effect to the legislative intent behind the Home Solicitation Sales Act. However, as a general rule in keeping with the policy behind the R.C. 1345.21(A)(4) exception, a "business establishment" should be a business location which is open to the general public. See, *Abnie, supra,* 175 Ohio St. 273, 25 O.O.2d 110, 194 N.E.2d 136. If the location is open to the public, then the consumer clearly would have an opportunity to go to the business location to consummate the deal. If the location is not open to the public, there must be at least some evidence that the consumer knew that there was a business location where he could go to complete the transaction.

Where, as here, the record is devoid of any evidence that the consumer knew that he had the option of going to the seller's business location to complete the transaction, the evidence cannot support a finding that the consumer actually had an opportunity to do so. If the home office in this case, which was not open to the general public nor in any manner advertised as a place of business, constituted a "business establishment," any salesperson living in the state of Ohio would be protected by this exception whenever a consumer initiated the transaction as long as the salesperson kept catalogs of the goods or services that he offered in a room in his home which he called an office. Such a result would defeat the purpose of the Home Solicitation Sales Act. Therefore, we conclude that the evidence did not support a finding that Clemens had a business establishment at a fixed location in Ohio.

The evidence in the record regarding the catalogs, samples, and minimal "inventory" Clemens kept at his house was relevant to a determination of the third element of the R.C. 1345.21(A)(4) exception, *i.e.,* whether the goods and services involved in the transaction were regularly exhibited or offered for sale at the fixed location. See *Bauer, supra,* 83 Ohio App.3d 53, 613 N.E.2d 1083 (record

was clear that seller had a business establishment, discussed when goods or services were regularly offered or exhibited for sale). We will not address the trial court's finding on that issue, because our holding that Clemens did not have a business establishment is determinative of this assignment of error.

■ Because Clemens failed to prove that he had a business establishment at a fixed location in the state, he did not meet his burden to prove that the transaction between him and Duwel was exempt from the Home Solicitation Sales Act. Therefore, the Act applied to the transaction. The parties stipulated that Clemens had not provided Duwel with notice of his right to cancel the contract in accordance with R.C. 1345.23(B). Further, they stipulated that Duwel sent Clemens a written notice of cancellation on June 29, 1993, about ten months after this action was filed.

The Home Solicitation Sales Act is clear that a consumer has the right to cancel a contract until midnight of the third business day after receiving notice of the right to cancel, and, if notice of the right is not given, the right does not expire. R.C. 1345.23. In order to ensure that, upon cancellation, both parties can be returned to their original positions as if the contract had not been made, the Act provides that "[w]here a home solicitation sale requires a seller to provide services, he shall not commence performance of such services during the time in which the buyer may cancel." R.C. 1345.22. "This legislative pronouncement is clearly intended to put the risk on the home improvement contractor who begins performance before giving the consumer proper notice of the right to cancel." *Bauer, supra,* 83 Ohio App.3d at 61, 613 N.E.2d at 1088. In *Bauer,* where the home improvement contractor had fully completed performance, we held that the contractor could not rely on completion of performance to avoid compliance with the notification requirement. *Id.,* citing *Edgell v. Aurora Builders, Inc.* (Dec. 12, 1985), Cuyahoga App. No. 49827, 1985 WL 4344, unreported; *Hines v. Thermal-Gard of Ohio, Inc.* (1988), 46 Ohio Misc.2d 11, 14, 546 N.E.2d 487, 490.

When a buyer exercises his right to cancel, the seller must, *inter alia,* "refund all payments made under the contract or sale." R.C. 1345.23(D)(4). In return, the seller is entitled to recover "any goods delivered by the seller pursuant to the sale. [These goods] shall not have been diminished in quantity nor subjected to unreasonable wear or use." R.C. 1345.27. However, the goods that Clemens provided pursuant to his contract with Duwel, *e.g.,* drywall, plaster, and flooring, were inextricably combined with the services he provided under the contract. The holding in *Hines, supra,* 46 Ohio Misc.2d at 14–15, 546 N.E.2d at 490–491, addressed such a situation:

"A home improvement contract such as the one at issue here is primarily a contract for services. Since [the contractor] failed to provide [the consumers] with adequate notice of cancellation, [the consumers'] right to cancel never

expired and that option was still available to them. * * * In so deciding, the court finds that the [consumers'] reason for cancelling the contract is not material to the issue. Further, having violated the statutory prohibition of R.C. 1345.22 by commencing performance prior to delivery of a notice of cancellation, [the contractor] cannot now be heard to complain of an unjust consequence. To hold otherwise would permit the seller to avoid the purpose of the Act entirely. " * * *

"The court, finding that [the consumers] have effectuated a cancellation of the contract with [the contractor], further finds that a return of the goods received by plaintiffs from [the contractor] is not required under the circumstances of this case. All parties agree that the windows cannot be removed without substantial damage to those windows. Further, return of the original windows to [the consumers] is an impossibility since they no longer exist. Therefore, [the consumers'] continued retention of the windows installed by [the contractor] is as close as we can come to returning the parties back to their original circumstances."

The facts before us are substantially similar to those before the court in *Hines.* Clemens demolished Duwel's original bathroom and completed much of the work of refinishing the bathroom. An order allowing Clemens to take back his drywall, plaster, and flooring would not only be impractical, but it would also constitute waste. Thus, Clemens bore the risk of not recovering the goods he provided along with his services by beginning work under the contract while Duwel had the right to cancel. Allowing Duwel to keep the goods used to renovate his bathroom is the best means of returning him to his original position.

Further, to prevent Clemens from circumventing the requirements of the Home Solicitation Sales Act, Clemens cannot be allowed to keep the amounts paid to him by Duwel pursuant to the contract. Although it may appear just to allow Clemens to keep an amount equal to the value of the goods and services that he provided, to do so would permit him to avoid the mandate of the statute by completing performance during the cancellation period. See *Bauer, supra,* 83 Ohio App.3d at 61, 613 N.E.2d at 1088. Thus, Duwel is entitled to a refund of the amount that the parties stipulated that he had paid under the contract, $4,400.

The first assignment of error is sustained.

Duwel's Second Assignment of Error

"The trial court erred, when, after finding [Clemens] violated Ohio's Consumer Sales Practices Act, it failed to treble [Duwel's] damages."

Duwel contends that the trial court erred when it failed to treble his actual damages in determining his remedy for Clemens's violation of the Consumer Sales Practices Act. Our resolution of the first assignment of error is dispositive of this assignment of error.

The referee's finding that Clemens violated the Consumer Sales Practices Act was not challenged through objections to the report and recommendation, and the court's adoption of that finding was not appealed. Based upon R.C. 1345.02(A) and 1345.03(B)(6), the referee concluded that Clemens had violated the Act by failing to inform Duwel "that the plans for the Victorian styled bathroom would not pass the plumbing inspection, and should be revised." The trial court awarded Duwel $1,850 in actual damages as a result of this violation. The remedies available to a private party alleging a violation of the Consumer Sales Practices Act are rescission of the transaction, recovery of damages, or, in some circumstances, recovery of treble damages. R.C. 1345.09. Regardless of whether in a particular case the consumer has a right to collect treble or only actual damages, the consumer is required to choose between an award of damages or rescission. The consumer is forced to choose between these remedies because "it is inconsistent to allow the consumer to rescind the contract while at the same time retaining rights in that contract and suing for damages." *Mid–America Acceptance Co. v. Lightle* (1989), 63 Ohio App.3d 590, 599, 579 N.E.2d 721, 727. As the court explained in *Lightle*, "only if the consumer elects to retain his rights under the contract may he recover three times his actual damages. However, if the consumer elects rescission, while he is entitled to be restored the amounts paid to the [violating] party, he is not entitled to three times that amount." *Id.*

The parties stipulated that Duwel sent a notice of cancellation to Clemens on June 29, 1993. As we discussed in the first assignment of error, this notice was effective to cancel the contract. Regardless of the fact that Duwel sent that notice of cancellation in an attempt to exercise his rights under the Home Solicitation Sales Act, his action resulted in the rescission of the contract. Once the consumer has chosen to rescind, or cancel, the contract, he is not entitled to recover damages under the Consumer Sales Practices Act. The consumer cannot cancel the contract in one context and still claim a right to enforce it in another context. Therefore, in deciding to cancel the contract in accordance with his rights under the Home Solicitation Sales Act, Duwel also effectually elected rescission rather than actual or treble damages under the Consumer Sales Practices Act.

Thus, Duwel was not entitled to actual or treble damages. This assignment of error is overruled.

Duwel's Third Assignment of Error

"The trial court erred when it found that [Clemens] substantially performed the written contract for the upstairs bath."

In this assignment of error, Duwel contends that the trial court erred in ordering him to pay Clemens the amount due on the contract because Clemens

had not substantially performed his duties under the contract. This assignment of error has been rendered moot by our determination that Duwel cancelled the contract. Because Duwel is entitled to a full refund for the amounts that he has paid on the contract and Clemens is not entitled to the value of the services which he did perform according to the Home Solicitation Sales Act, the issue of whether the contract was substantially performed is irrelevant.

The third assignment of error is overruled.

Clemens's Cross–Assignment of Error

"The court below erred when it held that [Duwel] was entitled to recover the cost of installing a shower in the upstairs bathroom."

In his cross-assignment of error, Clemens contends that Duwel was not entitled to any actual damages for Clemens's violation of the Consumer Sales Practices Act. For the reasons explained in the second assignment of error, we agree.

The portion of the trial court's judgment finding that the Home Solicitation Sales Act did not apply to the contract between Duwel and Clemens is reversed. Duwel is awarded the amount that he paid on the contract, $4,400, less the amount he was ordered to pay Clemens for the downstairs bathroom, $380.62, for a total judgment in favor of Duwel in the amount of $4,019.38. The judgment of the trial court awarding Duwel damages for Clemens's violation of the Consumer Sales Practices Act is reversed. In all other respects, the judgment is affirmed.

*Judgment accordingly.*

FAIN and GRADY, JJ., concur.