OPINION
Defendant/appellant/cross-appellee Mike Stockert appeals the judgments of the Court of Common Pleas of Tuscarawas County, which granted Summary Judgment and damages in favor of plaintiffs/appellees/cross appellants David H. Patterson and Melissa Patterson.
 STATEMENT OF THE FACTS AND CASE
On or about November 5, 1997, plaintiffs/appellees/cross appellants David and Melissa Patterson [hereinafter appellees] agreed with defendant/appellant/cross appellee Mike Stockert [hereinafter appellant] that appellant would remodel and enlarge the bathroom in appellees' home. The parties agreed to a price of $5,880.00. The agreement called for a down payment and three additional payments to be made, based upon completion of each phase of the work. Appellees made a down payment and appellant began the work in the "first part of November." Stockert Depo. at 14. Thereafter, on December 14, 1997, appellees were provided with a written contract.
Near completion of the work, probably sometime in January, 1998, after appellees had paid $4,800.00 to appellant, appellant told appellee Melissa Stockert that "he quit." Stockert Depo. at 23-27. This announcement was not made in writing but was made "face-to-face." Id. Appellant claimed that he quit because appellee Melissa Patterson breached the covenant of good faith and fair dealing, sexually harassed him, made performance impossible and gave defendant cause to quit.
Subsequently, on March 12, 1998, appellees sent appellant a letter which notified appellant that appellees were canceling the December 14, 1997, contract. Appellees requested that appellant return the money which they had paid on the contract. Appellant did not return the money.
In the meantime, appellees hired another contractor to finish the work. The contractor tore out and redid the work appellant had done. Appellees did not return the home improvement materials appellant had provided, but appellees took these items to the dump.
On March 17, 1998, appellees filed a Complaint against appellant. Appellees alleged four causes of action: (1) violation of the Home Solicitation Sales Act [hereinafter HSSA]; (2) violation of the Consumer Sales Practices Act [hereinafter CSPA]; (3) negligence in making home improvements; and (4) breach of contract. Appellant answered the Complaint on May 5, 1998, and, with leave of the trial court, filed an amended answer on June 25, 1999.
On May 7, 1999, appellant filed a Motion for Summary Judgment seeking the dismissal of the action in its entirety based upon the depositions. Appellees filed their own motion for summary judgment on May 18, 1999. Appellant opposed that Motion for Summary Judgment with a memorandum supported by appellant's affidavit filed on May 28, 1999.
On June 25, 1999, the trial court entered partial summary judgment. The trial court granted appellees summary judgment as to liability on the first and second causes of action, the HSSA and CSPA claims. The trial court granted summary judgment in favor of appellant and against appellees as to the third cause of action, negligence, and held that neither party was entitled to summary judgment on the fourth cause of action, breach of contract. The breach of contract claim and the issue of damages was set for a bench trial.
The trial court conducted a bench trial on July 12, 1999. However, at the beginning of the trial, the trial court dismissed the fourth cause of action, breach of contract, as moot in light of appellees election of rescission as a remedy for appellant's violation of the HSSA and CSPA. At the trial, the parties stipulated that the appellees had paid appellant $4,800.00 in connection with the home improvement.
The trial court then conducted a trial on the issue of damages. On October 29, 1999, the trial court entered judgment against appellant in favor of appellees, the Pattersons, in the amount of $4,800.00 and awarded attorney fees in the amount of $4,349.00. Thereafter, appellant requested Findings of Fact and Conclusions of Law. On December 29, 1999, the trial court issued Findings of Fact and Conclusions of Law in which the trial court found that appellant had failed to provide the appellee with a "notice of cancellation" as required by the HSSA. The trial court explained that it found that appellees were entitled to a refund of the $4,800.00 they had paid to appellant.
Appellant filed a timely notice of appeal. Appellees filed a timely notice of cross-appeal. The parties set forth the following assignments of error:
 I THE TRIAL COURT ERRED IN GRANTING PLAINTIFFS AND DENYING DEFENDANTS SUMMARY JUDGMENT ON THE HSSA CLAIM.
 II
THE TRIAL COURT ERRED IN AWARDING PLAINTIFFS $4,800.
 III THE TRIAL COURT ERRED IN AWARDING PLAINTIFFS ATTORNEY FEES.
 CROSS APPEAL A GENUINE ISSUE OF MATERIAL FACT EXISTS TO WHETHER STOCKERT BREACHED HIS DUTY OF CARE AND AN INJURY RESULTED THERE FROM TO THE PATTERSONS.
Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. In Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36, 506 N.E.2d 212. Civ.R. 56(C) states in pertinent part:
 Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law . . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.
Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall (1997), 77 Ohio St.3d 421, 429, 674 N.E.2d 1164, citing Dresher v. Burt (1966), 75 Ohio St.3d 280, 662 N.E.2d 264.
It is based upon this standard that we review the appellant's and cross-appellant's assignment of error.
 I
In this case, appellees hired appellant to expand and remodel their bathroom, including the installation of drywall, a bathtub and faucets.[1] In the first assignment of error, appellant contends that the Home Solicitation Sales Act does not apply to home improvement contracts which involve building materials that become fixtures to the land, such as the case sub judice.
Appellant cites this court to our prior decision in Collins HomeImprovement, Inc. v. Goodwin (Jan. 21, 1998), Richland App. No. 98-CA-26-2, unreported, 1999 WL 34677. In Collins, this court found that a homeowner could not invoke the protection of the Home Solicitation Sales Act or Consumer Sales Practices Act on the purchase of aluminum siding after the siding had been installed on the purchaser's home. In that case, we noted that the Magistrate found that once the siding was installed on the house, it was a fixture, rather than a consumer good.Id. (Citing Tamburs, Inc. v. Hiltner (1977), 55 Ohio App.2d 90,379 N.E.2d 231 (regarding the installation of aluminum siding) and BPIIndustries v. DeVaney (June 3, 1992), Perry App. No. CA-415, unreported, 1992 WL 147408. In BPI, supra, concerning the installation of a swimming pool, this court held that contracts for the sale or installation of items that become fixtures to or part of realty, such as the swimming pool, are not controlled by the Home Solicitation Sales Act. This court has previously reasoned that because R.C. 1345.27 requires the consumer to return the goods without diminution in quantity or unreasonable wear or use, and aluminum siding or a swimming pool could not be returned in its original condition once it had been installed, therefore, the sale or installation of such items could not be the subject of a home solicitation sale under the act. Collins, supra; B.P.I. Industries,supra (citing Tambur, 55 Ohio App.2d at 94.)
However, our prior decisions on this matter are unreported cases. Pursuant to the Supreme Court Rules for the Reporting of Opinions, an unpublished opinion may be cited by any court or party; however, it is only controlling authority on the parties involved in the unreported case. We note that several other jurisdictions have rejected the reasoning in Tambur and found that home improvement contracts are covered by the Home Sales Solicitation Act. Therefore, while acknowledging that the Collins decision is persuasive authority, we take this opportunity to revisit this issue.
For the reasons to follow, we find that the Home Solicitation Sales Act applies to the case sub judice. The initial question is whether the Home Solicitation Sales Act can be applied to the home improvement contract in this case. Since the Act does not expressly include nor exclude home improvement contracts, we look to the Ohio Supreme Court for guidance as to how to interpret the Act. The Ohio Home Solicitation Sale Act was patterned after the Federal Trade Commission rule entitled "Cooling-Off Period for Door-to-Door Sales," Section 429.1, Title 16, C.F.R., and was amended in 1974 to achieve substantial uniformity with the FTC rule. SeeBrown v. Martinelli (1981), 66 Ohio St.2d 45, 49; R. Bauer Sons Roofing Siding, Inc. v. Kinderman (1992), 83 Ohio App.3d 53, 57,613 N.E.2d 1083.[2] In Brown, supra, the Ohio Supreme Court stated that the legislature intended a broad meaning for the term "home solicitation sale." Brown v. Martinelli (1981), 66 Ohio St.2d 45, 49. Further, the Brown court stated that the Ohio legislature "clearly manifested an intention to give Ohio consumers greater protection than that afforded under the [comparative] federal rule. . . ." Id. at 49-50. A Home Solicitation Sale is defined as:
 . . . a sale of consumer goods or services in which the seller or a person acting for the seller engages in a personal solicitation of the sale at a residence of the buyer, including solicitations in response to or following an invitation by the buyer, and the buyer's agreement or offer to purchase is there given to the seller or a person acting for the seller, or in which the buyer's agreement or offer to purchase is made at a place other than the seller's place of business. R.C. 1345.21(A).
Consumer goods or services are "goods or services purchased, leased, or rented primarily for personal, family, or household purposes, including courses or instruction or training regardless of the purpose for which they are taken." R.C. 1345.21(E). This issue was addressed and analyzed by the Second District Court in R. Bauer Sons Roofing Siding, Inc.v. Kinderman (1992), 83 Ohio App.3d 53, 57, 613 N.E.2d 1083:[3]
 Both the Ohio Act, R.C. 1345.21(E), and the FTC rule, Section 429.1, fn. 1(b), define "consumer goods or services" as "goods or services purchased, leased, or rented primarily for personal, family, or household purposes." There is no further amplification of this definition in the Ohio Act and no Ohio cases have discussed the definition with any clarity. Therefore, the FTC rule is one important and useful source in determining what the General Assembly wished to encompass in the term "consumer goods or services." See Martinelli, 66 Ohio St.2d at 48, 20 O.O.3d at 40, 419 N.E.2d at 1083.
 The legislative history of the FTC rule clearly indicates that the rule was intended to protect the buyers of home improvement products and services, and that the products and services involved in home improvement and repair were to be considered "consumer goods or services."
For example, contained in the Statement of Basis and Purpose of the FTC rule is the following discussion of the nature of door-to-door sales:
 "While direct selling usually by-passes both the retailer and the wholesaler to reach the consumer, direct selling methods are used by many other merchants who maintain retail or wholesale businesses. For example * * * direct sellers operating [613 N.E.2d 1087] out of local business establishments include vendors of * * * storm windows and doors * * *." 37 F.R. 22936, fn. 24 (1972).
 In discussing the practice of disreputable door-to-door salesmen who misrepresent the price and quality of their wares, the legislative history of the FTC rule points to the example of a woman who paid $600 for a new roof which she could have purchased for less from a local contractor. Id. at 22939, fn. 49.
Further, we note that the Home Solicitation Sales Act specifically excludes certain transactions but does not exclude transactions concerning home improvements. See R.C. 1345.21(F).
Previously, this court relied upon Tambur which held that because R.C.1345.27[4] requires the consumer to return the goods without diminution in quantity or unreasonable wear or use, and aluminum siding could not be returned in its original condition once it had been cut and affixed to the realty, it could not be the subject of a home solicitation sale under the Act. Tambur, 55 Ohio App.2d at 94. However, upon review, R.C. 1345.22
states, in pertinent part: "[w]here a home solicitation sale requires a seller to provide services, he shall not commence performance of such services during the time in which the buyer may cancel." The Bauer court found that this legislative pronouncement was clearly intended to put the risk on the seller, or arguably the home improvement contractor, who begins performance before giving the consumer the proper notice of the right to cancel. Bauer, 83 Ohio App.3d at 61. It is only logical that if the seller does not begin to perform his services until after the consumer has been given proper notice of the right to cancel, the goods to be used by the seller will remain in the original condition. To hold otherwise would allow sellers or home contractors to circumvent the Act merely by beginning and completing performance within the cancellation period.
Therefore, we find that, in general, home improvement contracts are covered by the Home Solicitation Sales Act and that the trial court did not error in applying the Home Sales Solicitation Act to this case.
We must now consider whether, under the specific facts of this case, the Act applies. As stated supra, the Home Sales Solicitation Act applies to a:
 . . . sale of consumer goods or services in which the seller or a person acting for the seller engages in a personal solicitation of the sale at a residence of the buyer, including solicitations in response to or following an invitation by the buyer, and the buyer's agreement or offer to purchase is there given to the seller or a person acting for the seller, or in which the buyer's agreement or offer to purchase is made at a place other than the seller's place of business. R.C. 1345.21(A).
In the case sub judice, it is undisputed that Stockert, the home improvement contractor, and the Pattersons met in person at and entered into the contract at the Patterson's home. Since, as discussed above, we find that contracts to make home improvements concern consumer goods or services and are covered by the Act and the specific transaction between appellant and appellee meet the requirements of the Home Solicitation Sales Act, we conclude that the Home Sales Solicitation Act applies to the contract sub judice.
However, appellant argues that even if we should find that the Home Sales Solicitation Act applies to home improvement contracts, he is exempt pursuant to R.C. 1345.21(A)(4), which states:
 [A home solicitation sale] does not include a transaction or transactions in which:
 (4) The buyer initiates the contact between the parties for the purpose of negotiating a purchase and the seller has a business establishment at a fixed location in this state where the goods or services involved in the transaction are regularly offered or exhibited for sale.
R.C. 1345.21(A)(4) (Emphasis added).
The parties are in agreement that the Pattersons initiated the contact between the parties. Therefore, the issue to be considered is whether there is a genuine issue of fact as to whether Stockert had a "business establishment at a fixed location" where "the goods or services involved in the transaction are regularly offered or exhibited for sale." Id. InClemens v. Duwel (1995), 100 Ohio App.3d 423, 430, the Second District Court found that a "business establishment" should be a business location that is open to the general public and must be more than a home office.[5]
In the case sub judice, Stockert acknowledged that the address for Mike Stockert Construction was his home address. Stockert Depo. at 37. Stockert further acknowledged that he did not have a "shop" separate from his home and that he did not have a showroom or a place in which he displayed items at his home. Id. In an affidavit, Stockert made a general assertion, using the language from R.C. 1345.21(A)(4), that he maintained a business establishment at a fixed location in Ohio where his home improvement goods and services are regularly offered for sale. He gave the address as 9590-B Strasburg Bolivar Road. (At deposition he gave his home address as 9590 Strasburg Bolivar Road.) In the affidavit, Stockert followed the above assertion with the assertion that examples of his work were exhibited at a barn on his property but not in his home. Stockert asserted that he offered Melissa Patterson an inspection of a jacuzzi at his barn.[6]
Even if we find that appellant's affidavit and deposition are not in conflict with one another, we still find that summary judgment for appellee was appropriate as to the issue of whether appellant had a business establishment at a fixed location where goods or services are regularly offered or exhibited for sale. Construing the evidence in appellant's favor, we find that appellant's general assertion (which used the statutory language and stated that he maintained a business establishment at a fixed location in Ohio where his home improvement goods and services were regularly offered for sale) and his specific assertion (that he exhibited examples of his work at the barn at his business establishment) are insufficient as a matter of law to establish that appellant falls under the exclusion to the HSSA contained in R.C.1345.21(A)(4). In Bauer, supra., R. Bauer Sons Roofing maintained a warehouse and showroom, had "R. Bauer Sons Roofing and Siding, Inc." displayed at its business and customers regularly came there to transact business. Bauer, at pp. 55, 62, 63. The court in Bauer found Bauer to be exempt from the HSSA. In Clemens v. Duwell (1995), 100 Ohio App.3d 423, the court found that Clemens was not exempted from the HSSA because Clemens did not prove he had a business establishment. Clemens had a room in his personal residence which was the home office of Janus Builders, but there was no separate entry to this office and no way to tell from the street that the Janus Builders' office was in the house. "Further, Clemens did not present any evidence that customers generally knew about his home office or that he regularly invited customers to his office." Clemens, p. 429. The courts in Bauer and Clemens looked at many factors in making their decisions. However, a crucial factor for both courts was that the buyer would have had an opportunity to go to the business location to consummate the deal. This opportunity would exist if the business were open to the public. "If the location is not open to the public, there must be at least some evidence that the consumer knew that there was a business location where he could go to complete the transaction." Clemens, p. 430. No such evidence was presented by appellant in the case sub judice.
Since we agree with the trial court that the Home Solicitation Sales Act is applicable to this transaction, we must determine if there was any genuine issue as to whether the Act was complied with. The trial court found that Stockert failed to provide a contract to the Pattersons which contained a "Notice of Cancellation", in violation of the Ohio Home Solicitation Sales Act. See R.C. 1345.23. There is no factual dispute regarding the finding that Stockert failed to provide the Pattersons with a contract containing a "Notice of Cancellation". Stockert admitted in his Answer and Amended Answer that he provided no such notice. This is a clear violation of the Home Sales Solicitation Act.[7] A violation of the Home Sales Solicitation Act is a violation of the Consumer Sales Practice Act. R.C. 2345.28; 1345.02[8] Therefore, we find that summary judgment was appropriately granted on the Pattersons Home Solicitation Sales Act and the Consumer Sales Practice Act.
However, Stockert argues that a consumer cannot cancel a contract after a supplier has already rescinded the contract for good cause or after there has been a substantial change in the subject matter of the transaction. We disagree under the circumstances presented in the casesub judice.
A consumer has the right to cancel a contract, which is covered by the Home Solicitation Sales Act, until midnight of the third business day after receiving notice of the right to cancel, and if the notice of the right is not given, the right to cancel does not expire. R.C. 1345.23.[9]
In order to ensure that, upon cancellation, both parties can be returned to their original positions as if the contract has not been made, the Act provides that "[w]here a home solicitation sale requires a seller to provide services, he shall not commence performance of such services during the time in which the buyer may cancel. Clemens, supra.; R.C.1345.22. A contractor who begins, or even completes, work prior to the expiration of the cancellation period, does so at his own risk.Clemens, supra; Bauer, supra. Because Stockert never provided the Pattersons with a "Notice of Cancellation", the three day cancellation period never commenced nor ended. Therefore, the Pattersons were free to cancel their contract with Stockert at anytime. To hold otherwise would permit a contractor to escape liability under the Home Sales Solicitation Act by failing to provide a consumer with the necessary notice. In accord, Clemens, supra.
Appellant's first assignment of error is overruled.
 II
In the second assignment of error, Stockert argues that the trial court erred when it awarded the Pattersons $4,800.00 in damages, the full value of payments the Pattersons made to Stockert for the work. Stockert contends that he is entitled to credit for the value of the goods and services he finished for the Pattersons and that he had completed the phases of work required under the contract so as to entitle him to the $4,800.00. We disagree.
When a buyer exercises his right to cancel, the seller must "refund all payments made under the contract or sale." R.C. 1345.23(D)(4). In turn, the seller is entitled to recover "any goods delivered by the seller pursuant to the sale". R.C. 1345.27. Those goods are not to have been diminished in quantity or subjected to unreasonable wear or use. Id.
Once a contractor commences the work prior to the expiration of the cancellation period, the goods installed cannot and need not be returned to the seller. Clemens, 100 App.3d 423, 431-432. As discussed in assignment of error I, the risk fell upon Stockert once he commenced work prior to the expiration of the three day cancellation period. To allow Stockert to keep an amount equal to the value of the goods and services he provided would permit him to avoid the statutory mandate to begin work only after expiration of the cancellation period. In accord, Clemens,supra.
Therefore, we find the Pattersons are entitled to a refund of the amount paid by them to Stockert, $4,800.00.
Appellant's second assignment of error is overruled.
 III
In the third assignment of error, appellant argues that the trial court erred when it awarded attorney fees to the Pattersons. Stockert asserts that the trial court failed to make a mandatory finding that he acted knowingly when he violated the Home Solicitation Sales Act and Consumer Sales Practices Act. Further, he asserts that the record does not support such a finding.[10] We disagree.
Pursuant to R.C. 1345.09(F)(2), a trial court may award a consumer reasonable attorney fees when a supplier in a consumer transaction intentionally committed an act or practice which is deceptive, unfair or unconscionable.[11] In Einhorn v. Ford Motor Co. (1990),48 Ohio St.3d 27, the Ohio Supreme Court held that "knowingly" committing an act in violation of Revised Code Chapter 1345 means that the supplier need only intentionally do the act or practice that violates the Consumer Sales Practices Act. The supplier need not know that his conduct violated the law. Einhorn, supra, at 30.
Although we agree that the trial court did not make an explicit finding of "knowingly" in awarding attorney fees to the Pattersons, we find that the record clearly supports such a finding and that the trial court implicitly found Stockert acted knowingly when it awarded attorney fees. Stockert admitted in his Answer and Amended Answer that he did not provide the "Notice of Cancellation" to the Pattersons, and the trial court made a finding that "[appellant] failed to provide a contract to [appellees] which contained a "Notice of Cancellation." Therefore, pursuant to Einhorn, we find that the trial court's Cimplicit finding that Stockert acted intentionally and, therefore, knowingly when he failed to provide the Notice of Cancellation was supported by the record. We find the trial court did not err in awarding attorney fees to the Pattersons.
Appellant's third assignment of error is overruled.
 CROSS APPEAL
Appellees argue that the trial court erred when it granted summary judgment to appellant on appellee's negligence claim. In his Motion for Summary Judgment, appellant argued that the appellees could not prove the element of damages. As to the question of damages, the affidavit of Melissa Patterson stated "[i]t is my opinion that Mr. Stockert performed the work under this contract in a [sic] unworkmanlike contract manner."
We will address the question of damages first, as we find this issue dispositive.[12] Appellant presented the testimony of Ken Funk, the contractor that took over the remodeling and expansion of the Pattersons' bathroom after appellant quit. We find that Ken Funk, in his deposition, did provide testimony that some of appellant's work was done in a substandard manner including the wall between the shower and commode, the outside wall along side where the door was, the framing under the Jacuzzi, several irregularities and curves in the walls and the installation of the shower. Transcript pages 57 and 64. But Ken Funk also testified that it is his company's policy to tear out the work done by the previous contractor and re-do the work themselves, even if the previous work was satisfactory, as was done in the case sub judice:
 Q. Can you remember anything that you told the Pattersons about this quotation?
 A. Well, I explained to them what all we were going to do, how we would frame it, and, basically, this was done, basically, with us tearing everything out that had been done and us going in and freshly starting over and doing the work. That was our intention from the day one. Number one, we won't go in and repair somebody else's work like that because we just don't want the liability of it. We'll tear it out and completely redo it, and that's what we done.
Q. I take it this is a policy of yours?
 A. This is a policy of K. R. Sulzener Construction Company. . . .
Funk Deposition at page 21 — 22.
Funk also testified:
 Do you recall taking out any work that was right in the Patterson project?
 A. There possibly could have been some. I didn't try to segregate what was right and what was wrong . . . Some of his drywall work there wasn't anything wrong with it; . . . basically we took it all out for our own security, just to go through so we were sure we were doing it right.
Funk deposition at page 74.
While we find that Ken Funk prepared an itemized breakdown of his work, he did not segregate out the charges for the work he did to replace the work of Stockert that Funk deemed substandard. We also do not know whether the amount paid by the Pattersons, to have the remodeling redone by Funk after Stockert had begun, exceeded what Funk would have charged if he were the original contractor.
In response to appellant's Motion for Summary Judgment, appellees argue that Stockert's work was unworkmanlike and that they can show damages. In appellee's brief to this court, they argue, "[b]ecause damages are the cost of repair, David or Melissa Patterson can testify as to the cost of repairs." Nowhere do they argue that they did present those damages to the trial court.
In conclusion, we find that summary judgment was appropriate in regards to the appellees' negligence claim. Appellees have failed to provide sufficient evidence on the issue of damages.
Cross-appellant's assignment of error is overruled.
Based on the foregoing, we affirm the grant of summary judgment on Counts I and II of the Complaint, the HSSA and CSPA claims, and affirm the trial court's grant of summary judgment in regard to Count III of the Complaint, negligence.
The judgment of the Tuscarawas County Court of Common Pleas is affirmed.
Edwards, J.
Farmer, P.J. concurs.
Milligan, V.J. dissents.
[1] Pursuant to the agreement between the parties, appellees were primarily responsible to purchase major fixtures to be installed, such as a tub and faucets.
[2] In Iiams v. Bullock Garages, Inc. (Sept. 20, 1999), Richland App. No. 98CA75, we cited Bauer with favor. However, in that case, the contractor hired to construct a garage, stipulated in its answer to the complaint that the construction of the garage was a consumer transaction under R.C. 1345.01(A). Therefore, there was no necessity for this court to address whether the contract in question was a consumer transaction under the Home Sales Solicitation Act.
[3] Same as Footnote 2 above.
[4] "Except as provided in section 1345.26 of the Revised Code, within a reasonable time after a home solicitation sale has been canceled or an offer to purchase has been revoked, the buyer upon demand must make available to the seller any goods delivered by the seller pursuant to the sale. The goods made available shall not have been diminished in quantity nor subjected to unreasonable wear or use. The buyer is not obligated to make the goods available at any place other than his residence. If the buyer does make the goods available to the seller and the seller fails to pick them up within twenty days of the buyer's notice of cancellation the goods become the property of the buyer without obligation to pay for them. The buyer has the duty to take reasonable care of the goods in his possession before cancellation and twenty days thereafter, during which time the goods are otherwise at the seller's risk." R.C. 1345.27
[5] In Clemens, the contractor-defendant claimed that he had a home office from which he provided some samples and had office equipment but he did not advertise or hold his home out as a showroom.
[6] The deposition was taken on February 12, 1999, and the affidavit was signed on May 28, 1999. A court may disregard a self-serving affidavit that contradicts that party's deposition testimony unless the affiant sufficiently explains the inconsistency. Zara v. Gabrail (Dec. 21, 1998), Stark App. No. 98-CA-0064, unreported, 1999 WL4497.
[7] Section 1345.23 reads in pertinent part:
 Every home solicitation sale shall be evidenced by a written agreement. . . .
In connection with every home solicitation sale:
 The following statement shall appear clearly and conspicuously on the copy of the contract left with the buyer in bold-face type of the minimum size of ten points, in substantially the following form and in immediate proximity to the space reserved in the contract for the signature of the buyer: "You, the buyer, may cancel this transaction at any time prior to midnight of the third business day after the date of this transaction. See the attached notice of cancellation for an explanation of this right."
 A completed form, in duplicate, captioned "notice of cancellation", shall be attached to the contract signed by the buyer and be easily detachable, and and shall contain in ten-point, bold-face type, the following information and statements in the same language as that used in the contract. . . .(omitted).
R.C. 1345.23
[8] "Failure to comply with sections 1345.21 to 1345.27 of the Revised Code constitutes a deceptive act or practice in connection with a consumer transaction in violation of section 1345.02 of the Revised Code. R.C. 1345.28, [Unfair or Deceptive Acts or Practices, Ohio Consumer Sales Practices Act].
[9] See footnote 7.
[10] Stockert does not appeal the amount of attorney fees awarded by the trial court.
[11] (F) The court may award to the prevailing party a reasonable attorney's fee limited to the work reasonably performed, if either of the following apply:
. . .
 (2) The supplier has knowingly committed an act or practice that violates this chapter.
R.C. 1345.09
[12] "In order to show actionable negligence, one must show duty, breach of duty, and an injury resulting proximately there from." Menifeev. Ohio Welding Products (1984), 15 Ohio St.3d 75, 77, 472 N.E.2d 707.