OPINION
{¶ 1} Defendants-appellants Elyria Acquisitions No. 1, Mary Kay Szabo, and Jack Vasi ("Appellants") appeal the November 2004 judgment and sentence of the Court of Common Pleas, Crawford County, Ohio.
 {¶ 2} The facts of this case surround a cycle of tire shredding and dumping conducted by Elyria Acquisitions No. 1 ("Elyria"), an Ohio corporation, which occurred between 1999 and 2002. The co-defendants are employees of Elyria; Mary Kay Szabo is the owner and president of the company and Jack Vasi is Szabo's brother and is an employee of Elyria. Elyria operated a scrap-tire storage and shredding facility in Lorain County, Ohio, but the company lost its license to operate as a facility of that type in 1996. After the company lost its operating license, it was ordered by the Lorain County Court of Common Pleas to clean up the approximately 107,000 remaining scrap tires at the facility and to stop receiving additional tires.
 {¶ 3} Apart from the license to operate the scrap tire storage facility, Elyria held a license to transport scrap tires. This license was renewed on an annual basis from 1996 through 1999. However, when Elyria applied to have the transportation license renewed in 2000 the Ohio Environmental Protection Agency denied the license renewal. Elyria has not subsequently applied for a license to transport scrap tires.
 {¶ 4} However, the State alleged that Elyria transported scrap tires from May 2001 through February 2002 to the scrap tire storage facility in Lorain County. Moreover, the State alleged that the company failed to keep the license registration certificates for the scrap tire transportation license in the company's vehicles as required by R.C. 3734.83(A). The company was also in violation because it did not possess a scrap tire transportation license after December 31, 2001. The Ohio EPA removed approximately 350,000 scrap tires from the Elyria property in 2002.
 {¶ 5} Additionally, in May 2002 Defendant Vasi, with the knowledge of Defendant Szabo, signed a contract with Moyer Auto Wrecking ("Moyer") to shred scrap tires located at Moyer's facility in Crawford County. Vasi signed as a representative of a fictitious company called "Waste Tire Recovery"; the phone numbers he provided were the business telephone numbers of Elyria, and the address he listed for "Waste Tire Recovery" was non-existent. Thereafter, Vasi transported a tire shredder owned by Szabo from the Elyria facility into Crawford County for the purpose of shredding tires at the Moyer wrecking facility. He was observed on multiple occasions shredding tires at Moyer's facility.
 {¶ 6} On February 13, 2003 the defendants were separately indicted for several offenses stemming from this activity, due to the fact that they were transporting scrap tires and operating a scrap tire storage facility without a license. Szabo was indicted on ten counts of illegal transportation without registration in violation of R.C. 3734.83(A), two counts of possessing criminal tools in violation of R.C. 2923.24(A), two counts of operating a mobile tire shredding facility without a license in violation of R.C. 3734.81, one count of complicity in operating a mobile tire shredding facility without a license, one count of failure to maintain registration in violation of R.C. 3734.83(A), and one count of open dumping in violation of R.C. 3734.03. Defendant Elyria was indicted for ten counts of illegal transportation without registration in violation of R.C. 3734.83(A), one count of failure to maintain registration in violation of R.C.3734.83(A), one count of open dumping in violation of R.C.3734.03. Finally, Defendant Vasi was indicted on two counts of possessing criminal tools in violation of R.C. 2923.24(A), two counts of operating a mobile tire shredding facility in violation of R.C. 3734.81, and on one count of complicity to operate a mobile shredding facility in violation of R.C. 2923.03. Additional counts were brought against Waste Tire Recovery, but these counts were ultimately dismissed before trial.
 {¶ 7} Upon the motion of the State, the cases against the individual defendants were consolidated for trial. Two trials were set in 2003, but the defendants failed to appear at both trials. Szabo and Vasi were later apprehended by police in Florida, and were subsequently extradited to Ohio for trial that was finally held on September 27, 2004. As stated, the trial court dismissed all of the indicted counts against Waste Tire Recovery; the court also dismissed the ten counts against Elyria and Szabo for illegal transportation in violation of R.C.3734.83(A). At the close of trial, the defendants were found guilty on the remaining charges. Specifically, Szabo was found guilty on one count of complicity, two counts of operating a mobile tire shredding facility without a license, two counts of possessing criminal tools, one count of failure to maintain registration, and one count of open dumping. Vasi was found guilty of complicity, two counts of possessing criminal tools, and two counts of operating a mobile tire shredding facility. Elyria was found guilty of one count of failure to maintain registration and one count of open dumping.
 {¶ 8} Szabo and Vasi were each ordered to serve two-year prison sentences on the criminal counts, time suspended, and ordered to pay several thousand dollars in fines. Elyria was fined $25,000.00 each for failure to maintain a license and for open dumping. Additionally, Szabo and Vasi were each ordered to pay restitution to Moyer Auto Wrecking in the amount of $20,500.00. The defendants now appeal, asserting the following six assignments of error:
I. The trial court erred to defendant/appellant's prejudice indenying the Rule 29 motion for acquittal of possession ofcriminal tools.
 II. The trial court erred to defendants/appellants' prejudiceby overruling defendants' motions for acquittal on all counts ofillegal dumping.
 III. The trial court committed plain error by allowing intoevidence a previous Lorain County Court order that prohibiteddelivery of any tires at the site of Elyria Acquisitions.
 IV. The trial court erred to defendant/appellants' prejudiceby overruling their motion for acquittal on the charges ofoperating a mobile scrap tire facility without a permit.
 V. The trial court erred in finding and sentencingdefendant/appellant Szabo guilty of a felony for a violation ofR.C. 3734.83.
 VI. The trial court committed plain error in sentencing ofdefendant/appellants to pay restitution to Moyer Auto Wreckingand on separate counts of complicity.
 I {¶ 9} In appellants' first, second and fourth assignments of error they argue that the trial court erred in denying their motion for acquittal on the charges of possessing criminal tools, illegal open dumping, and operating a mobile scrap tire facility without a permit, respectively. Because these assignments of error raise similar legal issues, we will address them together.
 {¶ 10} A trial court should not grant a Crim.R. 29 motion for acquittal "if reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v. Bridgeman (1978),55 Ohio St.2d 261, 263, 381 N.E.2d 184 (applying the standard set out inState v. Swiger (1966), 5 Ohio St.2d 151, 214 N.E.2d 417, for Crim.R. 29(A) motions for acquittal). However, this Court has previously held that the Bridgeman standard "must be viewed in light of the sufficiency of evidence test[.]" State v. Foster
(Sept. 17, 1997), Seneca App. No. 13-97-09, 1997 WL 576353 (citing State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, ¶ 2 of the syllabus). Thus, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Jenks, 61 Ohio St.3d at ¶ 2 of the syllabus.
 {¶ 11} In their first assignment of error, appellants Szabo and Vasi contend that the trial court erred in denying their motion for acquittal on the charges of possession of criminal tools because the state failed to establish that they had the requisite intent to use the item in a criminal fashion. They argue that they were using the tire shredder for its legitimate purpose, and the fact that they did so without a license cannot transform the shredder into a "criminal tool."
 {¶ 12} However, the fact that an item has a legitimate legal use does not preclude it from being a criminal tool under R.C.2925.24(A). That statute provides that "[n]o person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally." R.C.2923.24(A). Therefore, the elements of the crime are (1) possession or control of (2) any "substance, device, instrument, or article" (3) with the purpose to use it criminally. State v.Lee (1990), 66 Ohio App.3d 773, 778, 586 N.E.2d 190; see alsoState v. Talley (1985), 18 Ohio St.3d 152, 156, 480 N.E.2d 439. "Thus, the focus is on the intended use or conduct rather than on the particular substance, instrument or article." Lee,66 Ohio App.3d at 778.
 {¶ 13} Upon review of the entire record, we find that the state presented sufficient evidence to establish that Szabo and Vasi possessed a criminal tool. The evidence demonstrates that the Ohio EPA ordered Moyer Auto Wrecking to dispose of scrap tires at their facility, and thereafter Moyer's representatives used an outdated list given to the company by the Ohio EPA to obtain Elyria's phone number. Moyer's representatives called Elyria to obtain services for disposal of scrap tires; they spoke to Jack Vasi, who indicated that he was a representative of Elyria, to obtain a quote for the services. Vasi indicated that he could do the job for $25,000.00, although the nearest quote Moyer's representatives had obtained was $50,000.00. Thereafter, Vasi signed a contract with Moyer Auto Wrecking to shred tires at their facility, even though he knew that Elyria did not possess a license to operate the shredder. In making the agreement, Vasi signed as a representative of a fictitious business after he was told by Moyer's representatives that they would need to send a copy of the agreement to the Ohio EPA in order to demonstrate that they were disposing of the tires.
 {¶ 14} Therefore, the evidence demonstrates that Vasi's purpose in transporting the shredder into Crawford County was to operate the shredder without a license in violation of R.C.3734.81. The evidence presented also demonstrated that Vasi operated the equipment at Moyer's facility with the assistance of several others believed to be Elyria employees. Accordingly, a rational trier of fact could have found that Vasi was in possession of an instrument with the purpose to use it criminally, and that he did use it criminally over the course of several days at the Moyer facility.
 {¶ 15} Moreover, the evidence was sufficient for a reasonable trier of fact to conclude that Szabo possessed criminal tools. The shredder was owned by her and utilized by a company that she also owned. Moyer contacted her company for the purposes of disposing of scrap tires. Thus, a reasonable trier of fact could conclude that she was in control of the shredder, even though Vasi had actual possession. Furthermore, because Moyer's representatives believed they were contracting with Elyria, and the contact information for the fictitious business was the actual contact information for Elyria, a reasonable trier of fact could conclude that Elyria and its owner had the purpose to use the shredder without a valid license. Accordingly, appellants' first assignment of error is overruled.
 {¶ 16} In their second assignment of error, appellants claim that the trial court erred in denying their Crim.R. 29 motion for acquittal on the charges of open dumping. They argue that the prosecution failed to present evidence of their intent to dispose of the scrap tires at the Elyria facility.
 {¶ 17} Defendants Szabo and Elyria were found guilty of open dumping in violation of R.C. 3734.03, which provides that "[n]o person shall dispose of solid wastes by open burning or open dumping, except as authorized by the director of environmental protection * * *." R.C. 3734.03. "Open dumping" is defined in R.C. 3734.01(I):
"Open dumping" means the depositing of solid wastes * * * ontothe surface of the ground at a site that is not licensed * * *,if the solid wastes consist of scrap tires, as a scrap tirecollection, storage, monocell, monofill, or recovery facilityunder section 3734.81 of the Revised Code; [or] the depositing ofsolid wastes that consist of scrap tires onto the surface of theground at a site or in a manner not specifically identified indivisions (C)(2) to (5), (7), or (10) of section 3734.85 of theRevised Code * * *.
 {¶ 18} First, the evidence clearly established that the Elyria facility did not hold a license to operate a scrap tire storage facility after it lost its license in 1996. Second, the evidence presented at trial established that the number of scrap tires at the facility grew in number from 107,000 to over 350,000 in the period since Elyria was ordered to stop receiving additional scrap tires and to dispose of the existing tires at the facility. Moreover, the evidence demonstrated that Defendant Vasi, as a representative of Elyria, entered into a contract with Moyer to dispose of scrap tires. Thus, viewed in a light most favorable to the prosecution, based on the evidence presented reasonable minds could conclude that scrap tires were being deposited at the facility in violation of R.C. 3734.03 . Accordingly, the second assignment of error is overruled.
 {¶ 19} In the fourth assignment of error, defendants Szabo and Vasi claim that the trial court erred in overruling their Crim.R. 29 motion for acquittal on the charges of operating a mobile scrap tire facility without a license in violation of R.C.3734.81. They claim that the shredder used in this case was not a mobile scrap tire facility as defined by statute. Defendant Szabo further claims that the prosecution failed to establish her involvement in operating the shredder.
 {¶ 20} R.C. 3734.81 provides that "no person shall operate a scrap tire collection, storage, monocell, monofill, or recovery facility without a license issued under this section by the board of health * * * or by the director of environmental protection * * *." It is clear from the record that neither Szabo or Vasi held a license to operate such a facility after the Lorain County Court order in 1996. The remaining question is whether there was sufficient evidence for a reasonable mind to conclude that the defendants operated a scrap tire facility of the type covered by the statute.
 {¶ 21} We note that the statute prohibits anyone from operating a scrap tire facility; it does not prohibit operation of a "mobile scrap tire facility." Although the defendants were indicted on the charge of "operating a mobile scrap tire facility in Crawford County," the indictment also specifically charged the defendants with a violation of R.C. 3734.81. Thus, the defendants were on notice of the specific charges against them — operating a scrap tire facility without a license — and were given an opportunity to defend against the allegations. See State v.Sellards (1985), 17 Ohio St.3d 169, 170; see also R.C. 2941.05
(An indictment "may be * * * in any words sufficient to give the accused notice of the offense of which he is charged."). Therefore, because the mobility of the shredder is not an element of offense under the statute, the prosecution did not need to establish that it was a mobile facility.
 {¶ 22} Even so, there was sufficient evidence in the record to establish that the shredder was a "mobile scrap tire facility." The Ohio Administrative Code defines such a facility as follows:
(a) A "mobile scrap tire recovery facility" * * * means anyunit for processing tires which is designed by the manufacturerfor the regular movement from one operating site to another andwhich the owner or operator has used at more than one locationduring the prior year. "Mobile scrap tire recovery facility"specifically includes any tire cutting, baling, or shreddingequipment that is moved from site to site for the purpose ofprocessing scrap tires into a useable product at the site orbefore the scrap tires are removed from the site.
Ohio Adm. Code 3745-27-01(S)(15)(a). Defendants allege that there was no evidence to establish that the shredder was "designed by the manufacturer" to be mobile; they contend that the evidence demonstrated that the shredder was not mobile because there were problems with its operation once it had been moved.
 {¶ 23} However, the defense argument ignores the very next sentence of the definition, which specifically covers the situation in the instant case. The evidence shows that the shredder was "shredding equipment that was moved from site to site for the purpose of processing scrap tires." The definition in the Administrative Code specifically covers two separate types of equipment that can constitute a "mobile" facility: a tire processing unit designed to be mobile, and a tire processing unit that is actually moved, regardless of its design. The evidence before the trial court clearly established that the shredder was loaded onto a flatbed truck and moved to the Moyer facility in Crawford County. The agreement with Moyer specifically noted that it was for the purpose of processing the tires at the Moyer facility. Therefore, there was sufficient evidence in the record for the jury to conclude that the shredder met the definition of a "mobile" facility.
 {¶ 24} There was also ample evidence that the defendants operated the shredder. Witnesses testified to the fact that Defendant Vasi operated the shredder at the Moyer facility. The evidence also demonstrated that he operated the shedder with the assistance of several Elyria employees. Thus, there was evidence in the record that Defendant Szabo, owner and president of Elyria, caused others under her direct authority to operate the shredder.
 {¶ 25} Accordingly, reasonable minds could find against the defendants on each element of the offense. Based on the foregoing, the trial court did not err in overruling the defendants' Crim.R. 29 motion for acquittal, and the fourth assignment of error is overruled.
 II {¶ 26} In their third assignment of error, the appellants claim that the 1996 order of the Lorain County Court of Common Pleas should not have been admitted into evidence because its prejudicial effect outweighed its probative value. Pursuant to Evid.R. 403(A), a trial court is prohibited from admitting otherwise relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A). In the case sub judice, there is no contention that the previous court order is not relevant, thus, the question before us is whether this relevant evidence must be excluded due to its prejudicial value or its potential to mislead the jury or confuse the issues.
 {¶ 27} We review questions pertaining to the admission of relevant evidence under Evid.R. 403(A) to determine whether the trial court abused its discretion. State v. Allen (1995),73 Ohio St.3d 626, 632-33; State v. Sage (1987),31 Ohio St.3d 173, 180. An abuse of discretion implies that the trial court's attitude is arbitrary, unreasonable or unconscionable. Blakemorev. Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 28} We note that the evidence in question, the 1996 order of the Lorain County Court of Common Pleas, is probative as to appellants' intent to commit open dumping. The order demonstrates that the appellants knew that they were not authorized to operate a tire scrap facility and that to do so would be in violation of both the court order and the statute. The question, then, is whether the effect of permitting the introduction of this evidence outweighed its probative value.
 {¶ 29} We hold that the evidence was properly admitted. The appellants assert that the admission of this evidence misled the jury into thinking that Elyria's acceptance of incoming tires in and of itself would constitute open dumping in violation of R.C.3734.03. However, there is nothing in the record that would indicate that the jury was misled in this manner. The trial court properly instructed the jury on the requirements of convicting the appellants on the open dumping charge, which minimized any prejudicial affect alleged by the defendants.
 {¶ 30} Appellants have failed to show that the jury was misled in any manner by the admission of the court order into evidence. Accordingly, we find that the trial court did not abuse its discretion in admitting the evidence over appellants' objection. The third assignment of error is overruled.
 III {¶ 31} In the fifth assignment of error, Defendant Szabo claims that the trial court erred in convicting her of a felony on the charge of failure to maintain a registration certificate in a vehicle in violation of R.C. 3735.83(A). Essentially, Szabo claims that the evidence presented was only sufficient to convict her of a misdemeanor offense.
 {¶ 32} Szabo was indicted on a violation of R.C. 3735.83(A), which requires someone who is transporting scrap tires to "maintain a copy of the registration certificate in each motor vehicle used by the registrant to transport scrap tires." Penalties for violations of Chapter 3734 are delineated in R.C.3734.99, and penalties for violations of R.C. 3735.83(A) are specifically covered under R.C. 3734.99(F):
(F) Whoever knowingly violates an order issued under division(A) of section 3734.13 regarding a violation of the provisions ofthis chapter governing scrap tires or division (B) of section3734.029, division (B) or (C) of section 3734.75, division (B) or(C) of section 3734.76, division (B) or (C) of section 3734.77,division (B) or (C) of section 3734.78, section 3734.81, division(A) of section 3734.83, or a term or condition of a permit orlicense issued under section 3734.76, 3734.77, 3734.78, or3734.81 of the Revised Code is guilty of a felony and shall befined at least ten thousand dollars, but not more thantwenty-five thousand dollars, or imprisoned for at least twoyears, but not more than four years, or both. Each day ofviolation constitutes a separate offense.
R.C. 3734.99(F). Szabo claims that there was no "order" entered into evidence, and therefore she could not be charged with a felony under this section. Instead, she could only be guilty of a misdemeanor for "recklessly violat[ing] * * * any provision of [Chapter 3734] governing scrap tires." R.C. 3734.99(E).
 {¶ 33} We disagree with defendant Szabo's interpretation of R.C. 3734.99(F). Under her interpretation, the language "knowingly violates an order" applies to every clause that follows, and therefore it is only a felony if one violates an order issued under R.C. 3734.83(A).
 {¶ 34} However, a plain reading of the statute leads to the conclusion that the "order" language in the first clause does not apply to subsequent clauses. The clause pertaining to violations of orders issued under R.C. 3734.13(A) is separated from the remaining clauses pertaining to violations of additional sections by the word "or." We must interpret the statute to give meaning to that word. Brown v. Martinelli (1981), 66 Ohio St.2d 45, 50,419 N.E.2d 1081 (quoting State, ex rel. Cleveland ElectricIllum. Co. v. Euclid (1959), 169 Ohio St. 476, 479,159 N.E.2d 756 (a "basic presumption in statutory construction [is] that the General Assembly is not presumed to do a vain or useless thing, and that when language is inserted in a statute it is inserted to accomplish some definite purpose.")). The word "or" separates the sentence into two distinct sections, one pertaining to a violation of an order under R.C. 3734.13(A) and one pertaining to violations of divisions of the other statutes. If the phrase pertaining to "orders" was meant to be applied to every division listed in the statute than there is no meaning that can be given to the first "or."
 {¶ 35} Moreover, nothing in R.C. 3734.83(A) authorizes the issuance of any "order." No court or government agency has authority to issue an order under that section, and therefore we cannot read R.C. 3734.99(F) to apply only to violations of R.C.3734.83(A) where an order was issued. Accordingly, Szabo's interpretation of R.C. 3734.99(F) leads to an absurd result which would render the entire statute meaningless as applied to violations of R.C. 3734.83(A).
 {¶ 36} Based on the foregoing, the trial court did not err in finding Defendant Szabo guilty of a felony on the charge of failure to maintain a registration license. The sentence was in accordance with the statute, and therefore the fifth assignment of error is overruled.
 IV {¶ 37} In the sixth and final assignment of error, defendants make two assertions: (1) that the court erred in ordering Defendants Szabo and Vasi to pay restitution to Moyer, and (2) that the court erred in sentencing them on separate charges of complicity. In rendering its sentence, the trial court has broad discretion to sentence under the Revised Code, and a reviewing court will not interfere with that sentence absent an abuse of discretion. See State v. Goucher (Dec. 16, 1988), Defiance App. No. 4-98-12, unreported, 1998 WL 896864, *1 (citing State v.Yontz (1986), 33 Ohio App.3d 342, 342, 515 N.E.2d 1012).
 {¶ 38} With regard to the first assertion, a trial court is permitted to impose financial sanctions on an offender, including restitution to the victim of the offender's crime "in an amount based on the victim's loss." R.C. 2929.18(A)(1). Defendant's claim that restitution is improper because Moyer cannot be considered a "victim" in this case. However, it is clear that Moyer suffered a significant economic loss as are result of defendants' criminal activities. Moyer contracted with the defendants to shred and remove scrap tires from its facility for $25,000.00. This agreement came after properly licensed
companies were offering to perform this service for $50,000.00. Moyer, having obtained contact information for Elyria from the EPA, had no way of knowing that Elyria no longer held a license to operate a scrap tire facility. Therefore, the defendants knowingly contracted with Moyer to perform a service they were not permitted to perform, and performance was not completed on the contract. This constituted an economic detriment to Moyer, and therefore Moyer can be considered a "victim" for purposes of R.C. 2929.18(A)(1). Accordingly, the trial court acted within its discretion in ordering the defendants to pay restitution.
 {¶ 39} With regard to the second claim under this assignment of error, the defendants argue that the trial court erred in sentencing the defendants on separate charges of complicity in operating a mobile tire shredding facility. Essentially, they argue that they cannot be separately sentenced on the complicity charge because they were found guilty and sentenced on the principal offense of operating a mobile scrap tire facility without a license. Thus, the question before this court is whether the defendants can be sentenced separately on both offenses pursuant to R.C. 2941.25.
 {¶ 40} At the outset, we note that the defendants never raised this issue before the trial court, and therefore we will review it only for plain error. State v. Comen (1990),50 Ohio St.3d 206, 211. Pursuant to Crim.R. 52(B), plain error requires that there be an obvious defect in the trial court proceedings that affects a substantial legal right. State v. Barnes (2002),94 Ohio St.3d 21, 27; State v. Long (1978), 53 Ohio St.2d 91, at ¶ 2 of the syllabus. Thus, "only extraordinary circumstances and the prevention of a miscarriage of justice warrant a finding of plain error." State v. Brown, Logan App. No. 8-02-09, 2002-Ohio-4755, ¶ 8 (citing Long, supra at ¶ 3 of the syllabus).
 {¶ 41} R.C. 2941.25 provides:
(A) Where the same conduct by defendant can be construed toconstitute two or more allied offenses of similar import, theindictment or information may contain counts for all suchoffenses, but the defendant may be convicted of only one.
 (B) Where the defendant's conduct constitutes two or moresimilar offenses of dissimilar import, or where his conductresults in two or more offenses of the same or similar kindcommitted separately or with a separate animus as to each, theindictment or information may contain counts for all suchoffenses, and the defendant may be convicted of all of them.
The Supreme Court of Ohio analyzed this statute in State v.Rance (1999), 85 Ohio St.3d 632. Put simply, in order to convict a criminal defendant on multiple charges, they must either be (1) of dissimilar import or (2) committed separately or with a separate animus if they are of similar import. Id. at 636. The test for determining whether two offenses are of similar import is whether the offenses "correspond to such a degree that the commission of one crime will result in the commission of the other." Id. (citing State v. Jones (1997), 78 Ohio St.3d 12,13). This test must be performed in the abstract, comparing the statutory elements of each offense while ignoring the facts of each particular case. Rance, supra at 636.
 {¶ 42} In the instant case, we are unable to determine from the record whether the offenses for which the defendants were found guilty were of similar import. We note that other Ohio courts have applied the Rance test and concluded that commission of an offense and complicity to commit an offense were of dissimilar import. See State v. Urbin, 148 Ohio App.3d 293,2002-Ohio-340. However, unlike Urbin, in which the Ninth District Court of Appeals found that complicity under R.C.2923.03(A)(1) for soliciting was not of similar import to the underlying offense, in this case the defendants were charged with complicity under both R.C. 2923.03(A)(1)(2). In the instant case we have no way of knowing from the record which theory the jury relied on — soliciting or aiding and abetting — when it found the defendants guilty of complicity. Additionally, the jury verdict does not indicate which theory it relied upon; the verdict merely states the jury found the defendants guilty "in the manner and form as he stands charged in the Indictment."
 {¶ 43} Based on the record we conclude that there is sufficient evidence to determine that the offenses were committed with a separate animus, and therefore we need not determine if the offenses were of similar import. State v. Cooper,104 Ohio St.3d 293, ¶ 20. The defendants were indicted on two charges of operating a mobile scrap tire facility — once on July 2, 2002 and once on July 18, 2002. There was evidence in the record to determine that scrap tires were actually shredded on those particular dates. On the other hand, the complicity charge alleged that the defendants either solicited another or aided and abetted another in committing the offense during the period of March 14, 2002 to July 18, 2002. In other words, rather than charging defendants on individual counts of operating a mobile scrap tire facility on every day during that period, the prosecution generically charged them with complicity to operate such a facility during that period. We find that there was no obvious defect in charging, prosecuting, or convicting the defendants in that manner, and therefore there was no plain error. The evidence before the court was such that defendants could have been convicted for additional charges of operating a scrap tire facility; there was no error in charging them with complicity instead. See Cooper, at ¶ 29.
 {¶ 44} Accordingly, the trial court did not error in sentencing defendants separately on the complicity charge because there was a separate animus. Because of the way they were indicted, we conclude that the record would support a finding that each did the act on the dates specified, and were complicit in the act throughout the rest of the time period. Based on the foregoing, the sixth assignment of error is overruled, and the judgments of the trial court is affirmed.
Judgments Affirmed.
 Bryant and Cupp, J.J., concur.